# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41316-2013

| | | |
|---|---|---|
| NORTH IDAHO BUILDING CONTRACTORS ASSOCIATION, | ) ) ) | Boise, January 2015 Term |
| Plaintiff-Appellant, | ) ) | 2015 Opinion No. 19 |
| v. | ) ) | Filed: February 26, 2015 |
| CITY OF HAYDEN, an Idaho municipality, | ) ) ) | Stephen W. Kenyon, Clerk |
| Defendant-Respondent. | ) ) ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County.  Hon. Benjamin R. Simpson, District Judge.

The judgment of the district court is <u>vacated</u>.

Jason S. Risch, Risch Pisca PLLC, Boise, argued for appellant.

Christopher H. Meyer, Givens Pursley LLP, Boise, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Kootenai County from a judgment upholding a sewer connection fee adopted by the City of Hayden.  We vacate the judgment of the district court.

## I.
## Factual Background.

The City of Hayden (the City) provides sewer service to the residents living in the City and to some persons living outside the City.  To do so, the City entered into a joint powers agreement with the Hayden Area Regional Sewer Board, which operates a regional wastewater treatment plant serving the City and two other local entities.  Pursuant to that agreement, the City collects sewage from its customers and delivers it to the regional treatment facility operated by the Regional Sewer Board.  The City is responsible for the construction, maintenance, and

operation of its collection system, which includes various components, such as trunk lines, sewer mains, interceptors, and lift stations which collect sewage for transport to the regional treatment facility.

The City charges each customer it serves a bi-monthly fee, which covers a proportionate share of the operation and maintenance of the City's sewer collection system and of the operation and maintenance costs associated with the regional wastewater treatment facility. In addition to the bi-monthly fee, the City charges a one-time "sewer capitalization fee" for each new structure, whether residential or commercial, and for any addition to an existing commercial structure that will result in an increase in the volume of sewage generated. The capitalization fee is charged when a building permit is issued.

The capitalization fee consists of two components: (a) the amount assessed to the City by the Regional Sewer Board for each connection to the City's sewer system, which the City collects and pays directly to the Regional Sewer Board, and (b) a fee retained by the City to fund capital improvements to replace, enlarge, or reconfigure the City sewer system so that it has adequate capacity for future users.

In March 2006, the City contracted with an engineering company to update the City's sewer master plan. In December 2006, the engineering company submitted a capital improvement plan in which it recommended forty projects that would cost about $20 million in order to replace existing infrastructure and to construct new infrastructure so that the sewer system would reach the entire area of city impact and accommodate anticipated future population growth. In order to finance the project, the engineering company recommended that the part of the capitalization fee retained by the City be increased from $735 for one equivalent residence ("ER") to $2,280 for one ER.

According to the City's administrator, "The City's portion of the sewer capitalization fee (the collection system component) for one ER was $580.00 during 2001 to 2005, $737.00 during 2005 to 2006, and $774.00 during 2006 and the first half of 2007." The City raised its portion of the fee to $2,280 effective June 7, 2007.

On April 12, 2010, the North Idaho Building Contractors Association (Contractors Association) filed this action to have the fee declared unlawful because it was an impermissible tax rather than a fee for services. The district court held that it was lawful and entered a judgment dismissing the complaint. The City requested an award of attorney fees, which the

court denied.  The Contractors Association appealed the dismissal of its complaint, and the City cross-appealed the denial of an award of attorney fees.

## II.
### Did the District Court Err in Holding that the Fee Increase Was Not an Impermissible Tax?

**Idaho Code section 63-1311(1).**  The district court held that the increased fee was authorized by Idaho Code section 63-1311(1), which provides:

> Notwithstanding any other provision of law, the governing board of any taxing district may impose and cause to be collected fees for those services provided by that district which would otherwise be funded by property tax revenues.  The fees collected pursuant to this section shall be reasonably related to, but shall not exceed, the actual cost of the service being rendered.

As the statute states, any fee collected pursuant to the statute "shall be reasonably related to, but shall not exceed, the actual cost of the service being rendered."  The issue is whether there was evidence supporting a finding that $2,280 was the actual cost of the service being rendered as of June 7, 2007.  There is no evidence in the record that it was.  In fact, the evidence in the record shows that it was not.

A house connected to the City sewer system on June 6, 2007, would have paid $774 as the City's part of the capitalization fee, while a house connected to the system the following day would have paid $2,280 for the same service.  The City does not point to anything in the record indicating that such increase was because the actual cost of providing sewer service increased by $1,506 or that the City had recalculated the actual cost and discovered that the City had been charging too little.  Rather, the City's administrator testified that the fee was raised to $2,280 based upon the engineering company's capital improvement plan "which contained updated analysis of the capital improvements needed to serve new growth, and updated cost and build-out projections."

The purpose of the fee increase was to create a fund to pay the cost of upgrading the existing sewer system and the cost of new construction in order to extend the sewer system to the entire area of city impact and provide sewer service to anticipated new residents of the City.  As stated by the City administrator in his affidavit, "Specifically, the capital improvement plan analyzed the need for the replacement of existing infrastructure and construction of future

3

infrastructure based on increases in capacity necessary to provide sewer to serve the ultimate build-out of the City and the area of city impact in accordance with the Hayden Comprehensive Plan."

The additional fee was calculated by dividing the estimated cost of the proposed construction ($20,416,900) by the estimated number of future ER's that could be constructed in the area of city impact.[1] The area of city impact is an area outside the city limits that is defined by considering the trade area, geographic factors, and areas that can reasonably be expected to be annexed to the city in the future. I.C. § 67-6525(b). Thus, the additional fee was not to provide sewer service to a house connected to the City sewer system after June 6, 2007, but to accumulate a fund to provide a sewer system to extend to areas to be acquired by the City in the future in order to serve the anticipated 160% increase in ER's.

Because there is nothing in the record showing that as of June 7, 2007, the sum of $2,280 was the actual cost of providing sewer service to a customer connecting to the City sewer system and there is no showing that the amount of the fee was based upon any such calculation, the fee was not authorized by Idaho Code section 63-1311(1). The district court erred in holding that it was.

**Idaho Code section 50-1030(f).** The district court also held that the $2,280 fee was authorized by Idaho Code section 50-1030(f), which is part of the Idaho Revenue Bond Act, I.C. §§ 50-1027 to 50-1042. The relevant portion of Idaho Code section 50-1030 states:

> In addition to the powers which it may now have, any city shall have power under and subject to the following provisions:
> . . . .
> (f) To prescribe and collect rates, fees, tolls or charges, including the levy or assessment of such rates, fees, tolls or charges against governmental units, departments or agencies, including the state of Idaho and its subdivisions, for the services, facilities and commodities furnished by such works, or by such rehabilitated existing electrical generating facilities, and to provide methods of collections and penalties, including denial of service for nonpayment of such rates, fees, tolls or charges;

Subsection (f) of the statute authorizes a city to "prescribe and collect rates, fees, tolls or charges . . . for the services, facilities and commodities furnished by such works." The statute

---

[1] The denominator of the fraction was "the projected future population (ER's) within the Area of City Impact, which the city estimates could be 37,835 people or 14,550 ER's (at 2.6 people per ER)" minus the "currently 5600 ER's active on the City's sewer system."

4

states that the applicable works "shall include water systems, drainage systems, sewerage systems, recreation facilities, off-street parking facilities, airport facilities and air navigation facilities, electric systems or any of them" as defined in the statute. I.C. § 50-1029(a).

In *Loomis v. City of Hailey*, 119 Idaho 434, 807 P.2d 1272 (1991), we held that a connection fee charged to connect to a city's sewer and water system could exceed the actual cost of physically connecting to the system. *Id*. at 442, 807 P.2d at 1280. We upheld a fee that required a new user to pay a one-time connection fee to "buy in" to the city's sewer and water system. We held that Idaho Code section 50-1030(f) "specifically gives the municipality the power to set and prescribe the rates, tolls and charges to support the system" and that the city could calculate the amount of the buy-in "by dividing the net system replacement value by the number of users the system can support. The new user is charged the value of that portion of the system capacity that the new user will utilize at that point in time." *Id*. at 441, 443, 807 P.2d at 1279, 1281.[2] In this case, the City did not calculate the fee by dividing the value of its current system by the number of users that system could support to determine the amount of the fee to be charged to each new user as an equity buy-in. Rather, it divided the estimated cost of increasing the size of the system from 5600 ER's to 14,550 ER's by the increase in capacity that would result from the construction and then charged each new user a proportionate amount of the cost of that increase.

In *Viking Const., Inc. v. Hayden Lake Irr. Dist.*, 149 Idaho 187, 233 P.3d 118 (2010), we applied the holding in *Loomis* to a comparable statute applicable to irrigation districts and held that the statute permitted them "to charge new users of the domestic water system a connection fee that included an amount equal to the value of that portion of the system capacity that the new user will utilize *at that point in time*." *Id*. at 194, 233 P.3d at 125 (emphasis added). We also held that "for the connection fee to be an equity buy-in, it must be based upon some calculation

---

[2] The three methods of valuing real property are the income approach, the sales comparison approach, and the cost approach. Because city sewer systems are not to be operated primarily as a source of city revenue and the services are to be furnished at the lowest possible cost, I.C. § 50-1028, and because of the lack of comparable sales of city sewer systems, the cost approach is the most feasible method for valuation. Under that method, value is based upon the estimated cost of duplicating the improvements to the real property, minus accrued depreciation, plus the value of the land, if any. Thus, in *Loomis*, the city calculated the net system replacement value "by first determining the gross replacement value of the system by using an engineering cost index to determine present day replacement cost of the system components," and it then subtracted from the gross replacement value "[u]nfunded depreciation and bond principal" to determine the net system replacement value. 119 Idaho at 443, 807 P.2d at 1281 (footnote omitted).

5

designed to determine the value of that portion of *the system that the new user will be utilizing*."
*Id.* (emphasis added). The capital improvement plan prepared by the engineering firm hired by the City states that "the City of Hayden has determined to compute capitalization fees based upon the projected costs of necessary capital improvements (CIP) divided by the projected capacity of those improvements." There is nothing in the record showing that the fee was based upon the value of that portion of the existing City sewer system that the new user will be utilizing. The fee was based upon the estimated cost of the construction necessary to extend sewer service throughout the city area of impact so that it may be used by those who could be connecting to the enlarged system at some time in the future. When a new user connects into the existing sewer system now, he will not be utilizing at that point in time the part of the system to be constructed in the future. The new user is not going to be storing the sewage he generates until the City completes its planned construction projects at some future time.

As we said in *Brewster v. City of Pocatello*, 115 Idaho 502, 768 P.2d 765 (1988), "In a general sense a fee is a charge for a direct public service rendered to the particular consumer, while a tax is a forced contribution by the public at large to meet public needs." *Id*. at 505, 768 P.2d at 768. That analysis applies here. The portion of the fee at issue in this case was not based upon the sewer service rendered to the new user who connects to the City's sewer system. It was based upon the estimated cost of new construction needed to extend that system to future users in other areas, including areas outside the City in its area of impact, in order to meet public needs. As we said in *Idaho Building Contractors Association v. City of Coeur d'Alene*, 126 Idaho 740, 890 P.2d 326 (1995), with respect to a city impact fee to pay for a proportionate share of the cost of improvements needed to serve development: "It is to be used for 'capital improvements' without limitation as to the location of those improvements or whether they will in fact be used solely by those creating the new developments. This is antithetical to this Court's definition of a fee." *Id*. at 743, 890 P.2d at 329.

Subsection (e) of Idaho Code section 50-1030 grants cities the power "[t]o issue its revenue bonds hereunder to finance, in whole or in part, the cost of the acquisition, construction, reconstruction, improvement, betterment or *extension of any works*, or to finance, in whole or in part, the cost of the rehabilitation of existing electrical generating facilities." I.C. § 50-1030(e) (emphasis added). Subsection (f) permits a fee "for the services, facilities and commodities *furnished* by such works" (emphasis added), but it does not state that the fee charged to one user

can be based upon the cost of extending the public works to provide service to future users. Had the legislature intended that the fee for service rendered to a particular customer could be calculated based upon the cost of extending the works to areas intended to be inhabited by future customers, it would have said so. It did not.

In *Loomis*, we stated that the Idaho Revenue Bond Act permitted an equity buy-in fee "to 'recover the costs of operating, maintaining, replacing, and depreciating the existing water and sewer systems and any extensions thereof.' " 119 Idaho at 444, 807 P.2d at 1282. In *Viking Construction* we quoted that statement, 149 Idaho at 196, 233 P.3d at 127, and held that connection fees collected by the irrigation district could be *spent* to extend the domestic water system operated by the irrigation district. We stated:

> The powers of an irrigation district under the Irrigation District Bond Act include "to construct, reconstruct, improve, better or extend any works within or without the district" and "[t]o operate and maintain any works within or without the boundaries of the district." I.C. § 43–1909(a) & (c). *Spending revenues* from connection fees for these purposes would be consistent with the Act.

*Id.* at 197, 233 P.3d at 128 (emphasis added).

However, there is a difference between the power to spend money and the power to tax or impose a fee to raise the money. A city's power to spend money does not include the power to impose any tax or fee that is necessary to raise the money it desires to spend. The power to spend money lawfully collected in order to extend the system is not the power to base a fee on the cost to extend the system to whatever size is desired. Thus, in *Viking Construction* we vacated the judgment because the evidence did not show that "the connection fee was based upon a reasonable method of determining an amount equal to the value of that portion of the system capacity that the new user will utilize at that point in time." *Id*. at 195, 233 P.3d at 126.

When a new user pays a sewer connection fee to a city based upon the value of that portion of the sewer system's capacity that the new user will be utilizing at that point in time, the connection fee will probably allow the city to accumulate a fund to increase the capacity of its sewer system. That proportionate value of the system capacity used by the new user will undoubtedly be more than any increased operational costs of adding the new user to the current system. Assuming that the city is able to extend its sewer system by accumulating a fund from charging new users a connection fee based upon the value of the system capacity that each of

7

them will be using, the Idaho Revenue Bond Act would not prevent a city from using those funds to extend its system, as long as it did so consistent with Idaho Code section 50-1028.

In this case, the fee retained by the City prior to the last increase was $774 for one ER. If we assume that the fee was calculated consistent with *Loomis* and was the value of that part of the system capacity that will be utilized by a new user at that point in time, the fee increase that took effect on June 7, 2007, would be about three times the value of the system capacity that would be utilized by a new user who connected on or after June 7, 2007. The City contends that the prior fees were less than the value of that part of the system capacity that would be utilized by a new user, but it does not point to any evidence in the record that supports that contention. The City also contends that the $2,280 fee per ER to pay the cost of increasing the capacity of its sewer system from 5,600 ER's to 14,550 ER's is equal to the value of the system capacity that would be utilized by the new user who connected to the system on or after June 7, 2007. Again, there is no evidence in the record to support that contention.

The City asserts that *Kootenai County Property Association v. Kootenai County*, 115 Idaho 676, 769 P.2d 553 (1989), "confirms that future benefits may be included in user fees." In that case, the association challenged a $54-per-year solid waste disposal fee on the ground that the fee was a tax because it did not provide an immediate benefit but only a future benefit. The relevant statute in that case permitted a county to both levy a property tax and collect fees from users of solid waste disposal facilities for the purpose of raising funds to acquire sites and facilities and to operate and/or maintain solid waste disposal systems.[3] This Court rejected the association's argument because "its distinctions between present and future benefits, specific and

---

[3] The relevant statute was Idaho Code section 31-4404, which states:

> For the purpose of providing funds to acquire sites, facilities, operate and/or maintain solid waste disposal systems, a board of county commissioners may in addition to the authority granted in sections 31-4402 and 31-4403, Idaho Code:
> (1) Levy a tax of not to exceed four hundredths percent (.04%) of the market value for assessment purposes on all taxable property within the county, provided that property located within the corporate limits of any city that is operating and maintaining a solid waste disposal site shall not be levied against for the purposes of the county solid waste disposal system; or,
> (2) Collect fees from the users of the solid waste disposal facilities; or,
> (3) Finance the solid waste disposal facilities from current revenues; or,
> (4) Receive and expend moneys from any other source;
> (5) Establish solid waste collection systems where necessary or desirable and provide a method for collection of service fees, among which shall be certification of a special assessment on the property served;
> (6) Use any combination of subsections (1), (2), (3), (4), and (5) of this section.

general benefits and voluntary and involuntary payments are all unpersuasive. As discussed above, the legislature specifically authorized counties to collect either fees or taxes both for current operations and future acquisition of landfill sites." *Id*. at 679-80, 769 P.2d at 556-57. Idaho Code section 50-1030(f) does not permit a city to charge both a fee and a tax.

There is nothing in the record showing that the fee of $2,280 was based upon the value of that portion of the system capacity that the new user will utilize at the point in time when the new user connects to the system. The district court erred in holding that the fee was consistent with Idaho Code section 50-1030(f).

**Idaho Code section 50-323.** The City contends that the fee can be upheld based upon Idaho Code section 50-323, which states:

> Cities are hereby empowered to establish, create, develop, maintain and operate domestic water systems; provide for domestic water from wells, streams, water sheds or any other source; provide for storage, treatment and transmission of the same to the inhabitants of the city; and to do all things necessary to protect the source of water from contamination. The term "domestic water systems" and "domestic water" includes by way of example but not by way of limitation, a public water system providing water at any temperature for space heating or cooling, culinary, sanitary, recreational or therapeutic uses.

The asserted relevance of this statute is that in *Alpert v. Boise Water Corp.*, 118 Idaho 136, 795 P.2d 298 (1990), this Court cited Idaho Code sections 50-323 and 50-325 for the proposition that "[i]t is undisputed that municipal corporations in Idaho have the power to operate their own utility systems and provide water, power, light, gas and other utility services within the city limits." 118 Idaho at 143, 795 P.2d at 305. There is no contention in this case that the City cannot operate its sewer system.

In *Alpert*, the plaintiffs filed the lawsuit to challenge the authority of various cities to enter into franchise agreements and to determine the validity of the franchise fees that are paid by the cities and eventually passed on to the consumers and ratepayers. The only part of that opinion that is of any relevance to the present case is the Court's reasoning in holding that the franchise fee is not a tax. We stated:

> The water and gas services provided by the utilities in this case are *based on consumption and use by the resident*. As noted in *Brewster*, the providing of sewer, water, electrical and other utility services to residents based on consumption of the commodity is a charge for a direct public service as compared to a tax which is a forced contribution by the public-at-large for revenue raising purposes.

9

*Id*. at 145, 795 P.2d at 307 (emphasis added).

The City also states that Idaho Code section 50-323 was discussed in *City of Grangeville v. Haskin*, 116 Idaho 535, 777 P.2d 1208 (1989). The sole issue in that case was whether a landlord could be held liable for water, sewer, and garbage services provided by the city to the landlord's tenants. *Id*. at 536, 777 P.2d at 1209. The City argues, "The strong implication of the case, however, is that section 50-323 (together with principles of contract law) authorizes cities to impose fees for sewer service." There is no reasonable reading of the case that so holds.

As clearly stated in the opinion:

> Here, the district judge relied on provisions of the statutes that granted to the city the power "to establish, create, develop, maintain and operate domestic water systems" (I.C. § 50-323) and "[t]o prescribe and collect rates, fees, tolls, or charges . . . for the services, facilities and commodities furnished by [water systems and sewerage systems], . . . and to provide methods of collections and penalties, including denial of service for nonpayment of such rates, fees, tolls or charges" (I.C. § 50-1030(f)).

*Id*. at 538, 777 P.2d at 1211.

The Court also noted that "I.C. § 50-344 grants cities 'the power to maintain and operate solid waste collection systems,'" and it then stated, "We acknowledge that the city may collect the charges for the water, sewer and garbage services provided by the city from those who use the services." *Id*. There is absolutely nothing that could reasonably be construed as holding that Idaho Code section 50-323 applies to "solid waste collection systems."

However, the Court did make one ruling that is relevant to this appeal. In discussing the district court's ruling, this Court stated:

> The district court also ruled that the power of the city to collect from the owner *was necessarily implied* from the powers granted to the city in I.C. §§ 50-323 and 50-1030(f). *We disagree*.
>
> This Court has repeatedly held that municipalities may exercise only those powers granted to them or necessarily implied from the powers granted. If there is a fair, reasonable, substantial doubt as to the existence of a power, the doubt must be resolved against the city. This is especially true where the city is exercising proprietary functions instead of governmental functions. The operation of a water system, a sewer system and a garbage collection service by the city is a proprietary function, not a governmental function.

*Id*. at 538, 777 P.2d at 1211 (citations omitted; emphases added).

10

**Idaho Code section 50-301.**  The City contends that the fee can be sustained based upon Idaho Code section 50-301.  That statute was not raised below, but the City contends that we could affirm the district court based upon this ground.  *See Johnson v. Blaine Cnty*., 146 Idaho 916, 921, 204 P.3d 1127, 1132 (2009) ("[T]he district court arrived at the correct result, but its decision was based upon the wrong theory.  We will affirm the decision on the correct theory.").

Idaho Code section 50-301 states:

> Cities governed by this act shall be bodies corporate and politic; may sue and be sued; contract and be contracted with; accept grants-in-aid and gifts of property, both real and personal, in the name of the city; acquire, hold, lease, and convey property, real and personal; have a common seal, which they may change and alter at pleasure; may erect buildings or structures of any kind, needful for the uses or purposes of the city; and exercise all powers and perform all functions of local self-government in city affairs as are not specifically prohibited by or in conflict with the general laws or the constitution of the state of Idaho.

Prior to 1976, the last clause of the statute only permitted the cities to exercise "such other powers as may be conferred by law."  In 1976, that phrase was changed to "all powers and perform all functions of local self-government in city affairs as are not specifically prohibited by or in conflict with the general laws or the constitution of the state of Idaho."  Ch. 214, § 1, 1976 Idaho Sess. Laws 784, 784.  The City contends that this statutory change should be construed as giving cities power to impose any taxes necessary to exercise these powers.  It cites no authority for that proposition.

"The legislature . . . may by law invest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation."  Idaho Const. Art. VII, § 6.  "However, that taxing authority is not self-executing and is limited to that taxing power given to the municipality by the legislature."  *Idaho Bldg. Contrs. Ass'n*, 126 Idaho at 742, 890 P.2d at 328.  There is a difference between the power of a city to act and the power of a city to tax.  A municipal corporation's taxes on the general public require specific legislative authorization.  *Potts Const. Co. v. North Kootenai Water Dist*., 141 Idaho 678, 681, 116 P.3d 8, 11 (2005); *Brewster*, 115 Idaho at 505, 768 P.2d at 768.  Idaho Code section 50-301 does not grant the City the power to tax in order to expand its sewer system.

## II.
**Did the District Court Err in Denying the City's Request for an Award of Attorney Fees?**

11

The City asked the district court for an award of attorney fees pursuant to Idaho Code section 12-117. That statute provides that in a proceeding where a political subdivision and a person are adverse parties, the court shall award the prevailing party reasonable attorney's fees if the nonprevailing party acted without a reasonable basis in fact or law. The district court correctly held that the Contractors Association did not act without a reasonable basis in fact and law in bringing this action. Therefore, the City was not entitled to an award of attorney fees.

### III.
### Is the City Entitled to an Award of Attorney Fees on Appeal?

The City also seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-117. Because the Contractors Association is the prevailing party in this appeal, the City is not entitled to an award of attorney fees.

### IV.
### Conclusion.

We vacate the judgment of the district court and remand this case for further proceedings that are consistent with this opinion. We award appellant costs on appeal.

Justices W. JONES and HORTON **CONCUR.**

J. JONES, Justice, concurring in the result.

I concur in the result reached by the Court—vacating the judgment and remanding the case for further proceedings. Although counsel for the City made meritorious arguments in favor of the City's case, except with respect to Idaho Code section 50-323, I was also troubled by the lack of support or explanation for the three-fold increase in the sewer capitalization fee as of June 7, 2007. As the Court indicates, this may have been because the City had been charging too little or because the actual cost of providing sewer service substantially increased. Or, the increase could have been the result of a desire to raise revenue, which would be an impermissible tax. It is critical that this issue be addressed on remand.

A further issue that deserves attention on remand is the issue of standing. Where a party challenges the imposition of a tax, that party must show that it bears the incidence of the tax in

order to have standing. *See,* generally*, V-1 Oil Co. v. State Tax Comm'n.*, 98 Idaho 140, 145, 559 P.2d 756, 761 (1977); *AmeriTel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 853, 119 P.3d 624, 628 (2005). In this case, the question is whether the incidence of the alleged tax is upon the Contractors Association, individual builders, or lot purchasers. Counsel for the Contractors Association indicated in oral argument that the Contractors Association includes both builders and lot purchasers, but the record is not entirely clear in this regard. That issue should be addressed upon remand.

Finally, the issue of valuation addressed in footnote 2 of the Court's Opinion should be determined in the further proceedings below. The conclusion reached in the footnote as to the proper means of performing such an valuation may be correct but it seems to me that expert opinion below should address that issue, as I feel uncomfortable deciding it upon appeal, especially where the case is being remanded for additional action.

Chief Justice BURDICK CONCURS.