# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44393

MANWARING INVESTMENTS, L.C., an
Idaho limited liability company,

    Plaintiff-Appellant,

v.

CITY OF BLACKFOOT, a municipal
corporation,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

Pocatello, September 2017 Term

2017 Opinion No. 110

Filed: November 3, 2017

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Seventh Judicial District, State of Idaho,
Bingham County. Hon. Darren B. Simpson, District Judge.

Order granting summary judgment, <u>affirmed.</u>

Manwaring Law Office, Idaho Falls, for appellant. Kipp L. Manwaring argued.

Sandow Law Offices, Blackfoot, for respondent. Garrett H. Sandow argued.

---

BURDICK, Chief Justice.

Manwaring Investments, L.C., (Manwaring) appeals from Bingham County, where the district court affirmed a grant of summary judgment to the City of Blackfoot (City). Manwaring sued the City in October 2014, alleging the City was overcharging it for wastewater utilities. The magistrate granted the City's motion for summary judgment. Manwaring moved for reconsideration, which the magistrate denied. Manwaring then appealed the magistrate's rulings to the district court, which affirmed the magistrate. Manwaring timely appeals the decision of the district court. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Manwaring owns a commercial building (the Building) located in the City. The Building, constructed in 2001, is approximately 5,000 square feet. Approximately 2,100 square feet of the Building is devoted to office space. The remaining space consists of "one central entryway, two

waiting areas, two hallways, and two separate restroom areas." Manwaring leases out space in the Building to several different commercial tenants.

City Ordinance No. 9-3-20 governs wastewater utility rates in the City. Ordinance No. 9-3-20 embodies the City's effort to "equate the wastewater use to an Equivalent Dwelling Unit [(EDU)]." One EDU signifies 350 gallons of wastewater discharge per day, which, as the City explains, is the "average volume of domestic waste discharged from an average residential dwelling unit." Averages are critical, Ordinance No. 9-3-20 indicates, because the City does not have "the technology or ability to measure . . . exact use of the sewer system." Thus, Ordinance No. 9-3-20 assigns properties "a multiplier point (based upon type of use) and then a point value is determined which is equal to how many EDU's that particular property is assessed."

The City amended Ordinance No. 9-3-20 in June 2014, but before that amendment, Ordinance No. 9-3-20 provided that an "[o]ffice, up to 20 employees" would be assessed one EDU. As such, one building containing, for example, ten offices, each having up to twenty employees, would be assessed ten EDUs. Even though the Building housed multiple commercial tenants (and thus multiple offices) from 2001 to 2007, it was assessed only one EDU. The assessment of one EDU yielded a monthly rate of $25.90 for wastewater utilities.

The City conducted a regular reassessment of EDU assessments in 2007. During this reassessment, the Building was assessed two EDUs. The new assessment took effect sometime in 2008, thereby increasing the Building's monthly rate for wastewater utilities to $51.80. The reason for this assessment was that multiple commercial tenants occupied the Building.

In June 2014, the City amended Ordinance No. 9-3-20. Ordinance No. 9-3-20, as amended, sets forth "19 different classifications and 74 different sub-classifications," which the City uses to make EDU assessments. The City explains that whether these different classifications and sub-classifications apply depends on the "type of building, size of building, type of business, number of businesses, type of waste water released, and other similar factors." Under Ordinance No. 9-3-20, as amended, the Building was assessed two EDUs because it is a commercial building with no food prep whose space exceeds 4,000 square feet. Also in June 2014, the City increased the base rate per EDU from $25.90 to $30.04. Thus, in June 2014, the Building's monthly wastewater utility rate increased from $51.80 to $60.08.

Disputing the assessment of two EDUs, but not the base rate per EDU, Manwaring filed a claim against the City for alleged wastewater utility overcharges on September 9, 2014.

Manwaring argued the Building should have been assessed one EDU, not two, because the assessment of two EDUs did not reasonably approximate the Building's actual wastewater discharge. Manwaring presented its claim to the city council on October 7, 2014. The city council concluded the assessment of two EDUs was permissible and denied the claim.

On October 14, 2014, Manwaring filed this lawsuit against the City and stopped paying the disputed portion of fees. Manwaring's complaint alleged that the assessment of two EDUs on the Building: (1) violates the Idaho Revenue Bond Act; (2) constitutes an unconstitutional tax; and (3) violates due process. In addition to requesting a declaratory judgment and an injunction, Manwaring requested damages in the amount of $1,803.66, which reflects the amount Manwaring allegedly overpaid for wastewater utilities.

On March 11, 2015, Manwaring moved for a preliminary injunction, seeking to enjoin the City from applying the assessment of two EDUs on the Building. On March 25, 2015, the magistrate held a hearing on Manwaring's requested preliminary injunction and denied it. The parties then filed cross-motions for summary judgment. On May 20, 2015, the magistrate denied Manwaring's motion for summary judgment and granted the City's motion for summary judgment. Manwaring timely moved for reconsideration, but the magistrate denied the motion. Manwaring then appealed the magistrate's rulings to the district court, which upheld the judgment in the City's favor. Manwaring timely appeals to this Court.

## II. ISSUES ON APPEAL

1. Was summary judgment properly granted to the City?
2. Was Manwaring's motion for reconsideration properly denied?
3. Is the prevailing party entitled to attorney fees on appeal?

## III. STANDARD OF REVIEW

"On appeal of a decision rendered by a district court acting in its appellate capacity, we directly review the district court's decision to determine whether it correctly decided the issues presented to it on appeal." *Borley v. Smith*, 149 Idaho 171, 176, 233 P.3d 102, 107 (2010) (citing *Idaho Dep't of Health and Welfare v. Doe*, 148 Idaho 124, 126, 219 P.3d 448, 450 (2009)).

## IV. ANALYSIS

Addressed below is whether (A) summary judgment was properly granted to the City; (B) Manwaring's motion for reconsideration was properly denied; and (C) the prevailing party is entitled to attorney fees on appeal.

3

**A.    Summary judgment was properly granted to the City.**

This Court has explained that, when it reviews a summary judgment on appeal,

it does so under the same standards employed by the district court. "The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits." Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Idaho R. Civ. P. 56(c).[1] Where the case will be tried without a jury, "the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." This Court freely reviews the entire record that was before the district court to determine whether either side was entitled to judgment as a matter of law and whether inferences drawn by the district court are reasonably supported by the record.

*Id.* at 176–77, 233 P.3d at 107–08 (citations omitted).

The district court's order affirming summary judgment to the City rests on four main bases: (1) the Idaho Revenue Bond Act; (2) whether the City's charge for wastewater utility services is an unconstitutional tax; (3) whether Manwaring's due process rights were violated; and (4) the Idaho Tort Claims Act.

1.    The Idaho Revenue Bond Act

Under article 8, section 3 of the Idaho Constitution, the City is authorized to construct and maintain certain public works projects. "[P]ursuant to this section of the Constitution, the Idaho legislature enacted the Idaho Revenue Bond Act [(IRBA)], codified at I.C. § 50-1027 through § 50-1042." *Loomis v. City of Hailey*, 119 Idaho 434, 438, 807 P.2d 1272, 1276 (1991). Manwaring places at issue the following provision of IRBA, which provides:

Any city acquiring, constructing, reconstructing, improving, bettering or extending any works pursuant to this act, shall manage such works in the most efficient manner consistent with sound economy and public advantage, to the end that the services of such works shall be furnished at the lowest possible cost. No city shall operate any works primarily as a source of revenue to the city, but shall operate all such works for the use and benefit of those served by such works and for the promotion of the welfare and for the improvement of the health, safety, comfort and convenience of the inhabitants of the city.

---

[1] The magistrate rendered its judgment in May 2015, and the district court affirmed in June 2016. Effective July 1, 2016, Idaho Rule of Civil Procedure 56 was amended. The relevant portion of the rule now provides: "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

4

I.C. § 50-1028.

Public works projects under IRBA "shall be and always remain self-supporting." I.C. § 50-1032. This Court has explained that "[t]he fees, rates and charges imposed by the municipality must be reasonable and produce sufficient revenue to support the system at the lowest possible cost as required by the Idaho Revenue Bond Act." *Loomis*, 119 Idaho at 442, 807 P.2d at 1280. To be sure, "the legislature has not imposed exacting rate requirements upon localities and the law requires only that the fee be reasonably related to the benefit conveyed." *Id.* Creating a fee structure "whereby every member of the general public would be charged only for his exact contribution of waste presumably could be established, but the system would be cumbersome and perhaps prohibitively expensive to maintain. The law only requires that the fee be reasonably related to the benefit conveyed." *Kootenai Cnty. Prop. Ass'n v. Kootenai Cnty.*, 115 Idaho 676, 680, 769 P.2d 553, 557 (1989).

Utilizing the above grants of authority, the City enacted Ordinance No. 9-3-20, which governs wastewater utility rates. It reads:

> The mayor and city council shall determine and set all applicable fees and charges for use of the sewer system. This chapter supplants and replaces resolution 240 and amendments thereto. The city currently does not have the technology or ability to measure each class's exact use of the sewer system. Therefore, the rates are based on an estimate of each class's contribution or potential contribution to the loading of the sewer system. A multiplier is assigned to each class pursuant the table set forth below. The multiplier is not based solely on the amount of water used and discharged into the system, but rather, takes into consideration other factors such as the estimated amount of BODs, CODs, suspended solids, and other contaminates that may be discharged into the system by the various classes of users, and the estimated number and types of users under each classification. To determine the monthly sewer charge, the multiplier (or equivalent residential unit, as it is sometimes called) is multiplied by the rate set from time to time by the city council by resolution or ordinance.

Ordinance No. 9-3-20.[2]

No contention is made that Ordinance No. 9-3-20 was not in effect when the Building was constructed in 2001. Thus, at all relevant times from the Building's construction until June 2014, Ordinance No. 9-3-20's EDU assessment structure provided that an "[o]ffice, up to 20 employees" would be assessed one EDU. The City amended Ordinance No. 9-3-20's EDU

---

[2] The pre- and post-amended forms of Ordinance No. 9-3-20 are identical in this regard.

5

assessment structure in June 2014. As a result of that amendment, now, a "[b]usiness for each 4,000 square feet (no food prep)" is assessed one EDU.

From 2001 to 2008, the Building, even though it housed multiple commercial tenants (and thus multiple offices), was assessed one EDU.[3] The City conducted a regular reassessment of EDU assessments in 2007. Thereafter, from 2008 until June 2014, the Building was assessed two EDUs because multiple commercial tenants occupied the Building, each having their own offices. And from June 2014 to present, the Building has been assessed two EDUs because it is a commercial building with "no food prep" whose space exceeds 4,000 square feet.

Manwaring challenges Ordinance No. 9-3-20 as it applies to the Building, contending the assessment of two EDUs does not reasonably approximate the Building's actual wastewater discharge. It is Manwaring's burden, then, to overcome Ordinance No. 9-3-20's presumption of validity. *Boise City v. Better Homes*, 72 Idaho 441, 447, 243 P.2d 303, 306 (1952) ("Ordinances and resolutions of a municipal corporation are presumed valid until the contrary is shown."); *accord City of Idaho Falls v. Grimmett*, 63 Idaho 90, 96, 117 P.2d 461, 463 (1941). In support of its argument, Manwaring submitted the affidavit of Lance Bates, a civil engineer with the City of Ammon. Bates testified to the City of Ammon's commercial wastewater utility rate structures. He opined that "factors used in establishing a reliable quantifiable basis . . . include the nature and type of commercial use, number of employees, number and types of plumbing fixtures in the business, metered water consumption rates, and known discharge flowrates if any." Evaluating the City's EDU assessment structure, Bates opined that "[a] multiplier based solely on square footage is random and arbitrary." Manwaring contends Bates's affidavit was uncontradicted and controls, and as such, summary judgment for the City was improper.

We reject Manwaring's argument. For one, Bates is incorrect that the City's EDU assessment structure is based "solely on square footage." In addition to square footage, Ordinance No. 9-3-20 has always "take[n] into consideration other factors such as the estimated amount of BODs, CODs, suspended solids, and other contaminates that may be discharged into the system by the various classes of users, and the estimated number and types of users under each classification."

Moreover, we do not find the City's EDU assessment structure to be random and arbitrary; rather, it meets IRBA's requirement that fees for public works projects must be

---

[3] The City asserts the Building should have been assessed two EDUs since its construction in 2001.

6

"reasonably related to the benefit conveyed." *Loomis*, 119 Idaho at 442, 807 P.2d at 1280. The City is unable to measure actual wastewater flowrates, as it "does not have the technology or ability to measure each class's exact use of the sewer system." Nor does the City "have the ability to test every business . . . ." The City therefore analyzes the potential wastewater flowrates based on the type of building and the character of its use,

> and based on the potential, since we do not have a direct way to measure flow, biological oxygen demand, chemical oxygen demand, total suspended solids or any other, the primary constituents in the wastewater, . . . we say, okay, this business, based on their type of business, falls in this chart here.

As Ordinance No. 9-3-20 clearly states, "the rates are based on an estimate of each class's contribution or potential contribution to the loading of the sewer system." *Cf. Loomis*, 119 Idaho at 443 n.4, 807 P.2d at 1281 n.4 (holding that utility connection fee, which sought to charge the new user for "the value of that portion of the system capacity that the new user will utilize," was reasonable).

In drafting Ordinance No. 9-3-20, the City relied on an engineering study and ordinances from other municipalities in Idaho. Under Ordinance No. 9-3-20 before it was amended, over thirty EDU classifications were provided. Buildings with different uses received different EDU classifications. For example, an assessment of two EDUs was given to "[c]ar washes (per stall)" and a "[c]afe, up to 50 seats." Under Ordinance No. 9-3-20, as amended, "19 different classifications and 74 different sub-classifications" are created. The City explains that whether these different classifications and sub-classifications apply depends on the "type of building, size of building, type of business, number of businesses, type of waste water released, and other similar factors." Thus, Ordinance No. 9-3-20's EDU assessment structure, while not based on actual wastewater flowrates, is not arbitrary.

Manwaring disputes the assessment of two EDUs, which yields a flat-rate based on discharge averages and discharge potentials. Manwaring overlooks, however, that we have stated that "[c]harging a flat residential sewage fee is reasonable even though the actual use (outflow volume) varies somewhat from house to house." *Kootenai Cnty.*, 115 Idaho at 678, 769 P.2d at 555 (citing *Schmidt v. Village of Kimberly*, 74 Idaho 48, 256 P.2d 515 (1953)). *Kootenai County* addressed an annual $54 solid waste disposal charge imposed on all habitable residences. *Id.* In upholding the fee as reasonable, we reasoned:

> No one suggests that each and every residence generates the same amount of solid waste. Presumably, the precise annual cubic yardage of solid waste from each

7

> residence could be painstakingly monitored and determined for each residence by county employees. However, all users would have to pay substantially more to cover the additional salaries of trash monitors.

*Id.* This Court further observed that different rate structures governed residences housing the elderly and indigent, and commercial establishments. *Id.* at 679, 769 P.2d at 556. Accordingly, because the $54 was not arbitrary, we upheld it as reasonable.

Here, similar to *Kootenai County*, Ordinance No. 9-3-20 has always set forth several different classifications and sub-classifications, depending on the type of building and the character of its use. Although it is possible that the City could acquire technology to make EDU assessments correspond with exactness to actual wastewater flowrates, exactness is not required. *Id.* at 678–80, 769 P.2d at 555–57; *Loomis*, 119 Idaho at 442, 807 P.2d at 1280. We agree with the magistrate that requiring the City to be more exact in making EDU assessments "could be overly consuming of time and treasure." *Cf. Kootenai Cnty.*, 115 Idaho at 678, 769 P.2d at 555.

In overemphasizing Bates's testimony, Manwaring overlooks that the City is not required to mold its EDU assessment structure to mirror any other municipality. Rather, the City has discretion in adopting a particular EDU assessment method. *See Viking Constr. v. Hayden Lake Irrigation Dist.*, 149 Idaho 187, 194, 233 P.3d 118, 125 (2010). Likewise, Manwaring overlooks that "[t]he opinion of an expert is not binding on the trial court, and, as long as it does not act arbitrarily, the trial court may reject expert testimony even when it is uncontradicted." *Pinnacle Eng'rs, Inc. v. Heron Brook, LLC*, 139 Idaho 756, 758, 86 P.3d 470, 472 (2004). Bates's testimony was not arbitrarily rejected. Rather, his testimony was addressed below and found unpersuasive:

> Could [the City] use a more precise methodology for setting its wastewater user rates? Yes. Lance Bates does give a more precise method of setting wastewater user rates, but at what cost (meters on every business for inflow and outflow, number and type of plumbing fixtures in each business, number of employees and customers each reporting cycle, and so on). It appears in Idaho, by statue [sic] and case law the standard is "reasonable approximation" without charging more that [sic] is required to make the system self-sufficient (enterprise fund concept). [The City] appears to have met this standard in this instance in setting its wastewater user rate and applying it to [the City].

The magistrate was "entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *Borley*, 149 Idaho at 176–77, 233 P.3d at 107–08 (quoting *P.O. Ventures, Inc. v. Loucks Family Irrev. Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007)).

Finally, Manwaring overlooks that fees for public works projects can be collected for "operation, maintenance, replacement and depreciation, including creating and maintaining reserves for such expenses." *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 202, 899 P.2d 411, 415 (1995) (citing I.C. §§ 50-1033(b), -1033(e)). Manwaring has presented no argument or evidence that the City uses the fees at issue for anything aside from these expressly permitted purposes. *But cf. Hill-Vu Mobile Home Park v. City of Pocatello*, No. 44074-2016, 2017 WL 3880760, at *2 (Idaho Sept. 6, 2017) ("The City wanted to obtain a profit in excess of the amounts necessary for the water and sewer systems to remain self-supporting. This profit was paid into the general fund.").

In sum, Manwaring has not overcome Ordinance No. 9-3-20's presumption of validity. As we have explained previously:

> It is not the province of this Court to determine how a municipality should allocate its fee and rate system. So long as the fees and rates charged conform to the statutory requirements and are reasonable, the fees, rates and charges will be upheld. The fees, rates and charges imposed by the municipality must be reasonable and produce sufficient revenue to support the system at the lowest possible cost as required by the Idaho Revenue Bond Act.

*Loomis*, 119 Idaho at 442, 807 P.2d at 1280. Recognizing that our "limited role in this situation is to determine whether the fees, rates and charges conform to the statutory requirements, are reasonable and are not arbitrary," *Id.* at 443, 807 P.2d at 1281, we conclude the City has not violated IRBA for the reasons articulated above.

2.    Unconstitutional tax

Manwaring argues the charge for the City's wastewater utilities is an unconstitutional tax. The legislature has authority to give municipalities "the power to assess and collect taxes for all purposes of such corporation." Idaho Const. art. VII, § 6. But the "grant of taxing power to cities is not self-executing or unlimited. It is limited by what taxing power the legislature authorizes in its implementing legislation." *Brewster v. City of Pocatello*, 115 Idaho 502, 503, 768 P.2d 765, 766 (1988). Accordingly, taxes require legislative approval and authorization. *Id.*

Manwaring's argument inquires whether the charge for the City's wastewater utilities is a fee or an unconstitutional tax. "In a general sense a fee is a charge for a direct public service rendered to the particular consumer, while a tax is a forced contribution by the public at large to meet public needs." *Id.* at 505, 768 P.2d at 768. "[W]hen the rates, fees and charges conform to the statutory scheme set forth in the [IRBA] or are imposed pursuant to a valid police power, the

9

charges are not construed as taxes." *Loomis*, 119 Idaho at 438, 807 P.2d at 1276. On the other hand, "if the rates, fees and charges are imposed primarily for revenue raising purposes they are in essence disguised taxes and subject to legislative approval and authority." *Id.*

Here, the charge for the City's wastewater utilities is not an unconstitutional tax. As reasoned above, the rate conforms to the statutory scheme set forth under IRBA. Additionally, nothing suggests that the City impermissibly uses money collected from wastewater utilities for revenue raising purposes. Indeed, the magistrate concluded "there was no evidence presented that [the City] is raising funds exceeding the expenses of operating the wastewater system (for example, no evidence that money was taken from the wastewater fund and transferred into the general fund)." And the district court concluded the magistrate was correct, explaining that:

> [T]he City's wastewater system for sewage operates financially independently from the City in that it "stands alone" from the general tax revenues generated by the City and is self-supporting. The wastewater treatment plant creates an annual budget for its probable revenue, expenses, debt payments, and reasonable reserves. The City contracts with engineering firms as needed to review the wastewater treatment plant's operations, its probable expenses, *et cetera*.

Manwaring points out no error in these findings. Manwaring instead cites to *North Idaho Building Contractors Association v. City of Hayden*, 158 Idaho 79, 81, 343 P.3d 1086, 1088 (2015), to contend "[w]here evidence proves that an assessment of 2 EDUs is not the actual cost of the sewer service being provided, the fees assessed are an unlawful tax."

But *City of Hayden* does not assist Manwaring. In *City of Hayden*, the City of Hayden nearly tripled the capitalization fee for new users on the local sewer system. *Id.* at 81, 343 P.3d at 1088. As this Court summarized the relevant facts, "A house connected to the City sewer system on June 6, 2007, would have paid $774 as the City's part of the capitalization fee, while a house connected to the system the following day would have paid $2,280 for the same service." *Id.* The purpose behind the fee increase was to gather funds to upgrade the sewer system and "extend the sewer system to the entire area of city impact and provide sewer service to anticipated new residents . . . ." *Id.* This Court concluded the capitalization fee was an unconstitutional tax because it did not represent any attempt to approximate actual use. *See id.* at 81–85, 343 P.3d 1088–92. The capitalization fee was collected instead to improve and extend the sewage system. *Id.* at 81, 343 P.3d at 1088. While this Court recognized that any excess money lawfully collected could be used to extend the sewage system, this Court clarified that "[t]he power to spend money lawfully collected in order to extend the system is not the power to base a fee on

the cost to extend the system to whatever size is desired." *Id.* at 83, 343 P.3d at 1090. Accordingly, the $2,280 capitalization fee was a disguised tax subject to legislative approval and authority. *Id.*

Here, Manwaring points to nothing that shows the City is collecting the wastewater utility fees in an attempt to unduly improve or expand the system. Instead, "the rates are based on an estimate of each class's contribution or potential contribution to the loading of the sewer system." Manwaring's argument is that its wastewater utility fees should be closer to exactly what its actual use is. But, as noted, exacting requirements are not required. *Loomis*, 119 Idaho at 442, 807 P.2d at 1280. Therefore, we conclude the charge for the City's wastewater utilities is not an unconstitutional tax.

### 3. Due process

Manwaring contends its due process rights were violated when the City increased the Building's EDU assessment from one to two without first providing notice. The United States and Idaho Constitutions prevent state deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; Idaho Const. art. 1, § 13. Due process has a procedural and substantive component. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994); *Bradbury v. Idaho Judicial Council*, 136 Idaho 63, 70, 28 P.3d 1006, 1013 (2001).

Manwaring's argument sounds in procedural due process, an inquiry "focused on determining whether the procedure employed is fair." *Bradbury*, 136 Idaho at 72, 28 P.3d at 1015. The threshold step in a due process analysis is to determine whether a protected interest giving rise to due process protections even exists. *See Leon v. Boise State Univ.*, 125 Idaho 365, 370, 870 P.2d 1324, 1329 (1994). "To receive due process, the property interest must be an identifiable and legitimate claim or entitlement to a specific benefit provided by state or federal law." *Guzman v. Piercy*, 155 Idaho 928, 939, 318 P.3d 918, 929 (2014).

Here, the district court properly concluded Manwaring's due process claim fails at the threshold step. That is to say, Manwaring does not have a protected interest in a specific EDU assessment. The source of Manwaring's interest is Ordinance No. 9-3-20, which is recited above. Ordinance No. 9-3-20 is of general applicability and does not apply solely to the Building. Of particular importance is how Ordinance No. 9-3-20 states that "[t]he mayor and city council shall determine and set all applicable fees for use of the sewer system." Within legal limits, the mayor and the city council are authorized to set whatever EDU assessment structure they deem proper.

Even once the EDU assessment structure is set, it is not intransigent. The city council remains free to amend Ordinance No. 9-3-20 "from time to time by resolution . . . ." Ordinance No. 9-3-20 specifically instructs that "[a] reassessment of each commercial user will be completed at a minimum of once every five (5) years."

In sum, Ordinance No. 9-3-20 does not create any "legitimate claim or entitlement" to a particular EDU assessment. *Cf. Leon*, 125 Idaho at 370, 870 P.2d at 1329 (holding that employee had no protected interest in indefinite employment because employer had discretion whether to renew employee's one-year employment contract). We affirm summary judgment for the City on Manwaring's due process claim.

**B.      Manwaring's motion for reconsideration was properly denied.**

When a motion to reconsider is raised for our review, we employ "the same standard of review used by the lower court in deciding the motion for reconsideration." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). Thus, when a motion to reconsider follows the grant of summary judgment, "this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Id.*

Manwaring has not shown it presented any new argument or evidence on reconsideration. Accordingly, Manwaring's motion for reconsideration was properly denied. *See, e.g.*, *Spur Prods. Corp. v. Stoel Rives LLP*, 143 Idaho 812, 817, 153 P.3d 1158, 1163 (2007); *Jordan v. Beeks*, 135 Idaho 586, 592, 21 P.3d 908, 914 (2001) ("[W]e conclude that the district court was provided with no new facts to create an issue for trial, and thus there was no basis upon which to reconsider its summary judgment order.").

**C.      We decline to award attorney fees on appeal.**

Both parties request attorney fees on appeal under Idaho Code section 12-117, which provides:

> Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117(1). Based on the above, the City is the prevailing party on appeal. However, Manwaring did not act without a reasonable basis in fact or law. Instead, Manwaring argued complex issues in good faith. Thus, we do not award attorney fees on appeal.

## V. CONCLUSION

For the reasons above, we affirm the judgment in favor of the City. Although Manwaring raises issues concerning whether the preliminary injunction and the damages request were properly denied, and whether the district court erred by *sua sponte* raising the Idaho Tort Claims Act as an alternative ground in affirming the judgment, those issues need not be addressed in light of the above since none of those issues have the potential to affect Manwaring's substantial rights. I.R.C.P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). We award costs on appeal, but not attorney fees, to the City as the prevailing party.

Justices JONES, HORTON, BRODY and DUNN, Pro Tem, CONCUR.