# IN THE SUPREME COURT OF THE STATE OF IDAHO
**Docket No. 39535**

RICHARD I HEHR and GREYSTONE
VILLAGE LLC,

    Plaintiffs-Appellants-Cross
    Respondents,

v.

CITY OF MC CALL,

    Defendant-Respondent-Cross
    Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
.

Boise, May 2013 Term

2013 Opinion No. 82

Filed:  July 11, 2013

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Valley County.  Hon. Michael R. McLaughlin, District Judge.

District court grant of summary judgment in favor of respondent, <u>affirmed.</u>

Borton & Lakey, Boise, for appellants. Victor S. Villegas argued.

Givens Pursley, LLP, Boise,  for respondents.  Christopher H. Meyer argued.

_____

BURDICK, Chief Justice

Appellants Richard Hehr and Greystone Villages, LLC (collectively "Greystone") appeal from the Valley County district court's grant of summary judgment in favor of Respondent City of McCall. Greystone's claims arose out of its development agreement with McCall. Greystone alleges that it deeded nine lots to McCall in lieu of paying the required community housing fee, which was later declared unconstitutional in a separate proceeding. Greystone brought inverse condemnation claims against McCall alleging that the conveyance of the nine lots and the improvements made to those lots constituted an illegal taking under both the Idaho Constitution and the United States Constitution. McCall moved for summary judgment, which the district court granted and Greystone now appeals. We affirm the district court's grant of summary judgment.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Greystone filed applications for a subdivision and planned unit development on January 12, 2005. At that time, McCall had no community housing requirements. Subsequent to Greystone's application, McCall passed Ordinance Nos. 819 and 820, which went into effect on March 9, 2006. Ordinance No. 819 required developers to contribute community housing units upon submitting a subdivision request, while Ordinance No. 820 required developers to pay a community housing fee upon issuance of a building permit.

Greystone's subdivision was not subject to Ordinance No. 819 because it filed its applications before the ordinance's enactment. However, because Greystone had not yet obtained a building permit when McCall enacted Ordinance No. 820, it applied to Greystone. Although Ordinance No. 819 did not apply to Greystone's subdivision, Greystone still contributed nine lots within the subdivision valued at $1,117,000 to McCall. Greystone and McCall agreed that the value of these lots would serve as a credit in the event that any future community housing fees were assessed. The parties signed a Development Agreement on May 3, 2006. In accordance with this agreement, Greystone conveyed the nine lots to McCall on July 31, 2006. After the conveyance, McCall required Greystone to construct roads and utility improvements servicing the nine lots, a requirement Greystone contends was never contemplated in the Development Agreement.

Almost two years after the parties signed the Development Agreement, a district court invalidated both Ordinance Nos. 819 and 820 as invalid taxes. Following the decision, McCall repealed both ordinances on April 24, 2008. As of that date, McCall had accepted the lots from Greystone and Greystone had constructed community housing on the lots and conveyed them to qualified low income families and individuals.

After McCall repealed the ordinances, it passed Resolution 08-11 to refund the fees paid pursuant to Ordinance No. 820. McCall later passed Resolution 09-10, which set a December 31, 2009 deadline for refund requests under Resolution 08-11. On November 12, 2009, Greystone submitted a refund request to recover for the value of the nine lots. McCall denied this request finding that the lots were not subject to either Ordinance No. 819 or No. 820.

Greystone filed a Complaint against McCall on July 15, 2010, and an Amended Complaint the following day stating claims for inverse condemnation. After some discovery, McCall filed a Motion for Summary Judgment, which the district court granted on June 16, 2011.

Greystone then filed a Motion for Reconsideration in which Greystone argued that the district court did not fully dispose of all of its takings claims because the court did not address its claim to recover the cost of constructing improvements to the nine lots. The district court issued a second memorandum decision denying this motion and ruling that Greystone's claim to recover for the improvements was encompassed in its claim to recover the value of the nine lots. The district court entered a judgment on November 22, 2011. Greystone timely filed this appeal and McCall then filed a cross-appeal.

## II. STANDARD OF REVIEW

> When reviewing a ruling on a summary judgment motion, this Court applies the same standard used by the district court. Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The burden of establishing the absence of a genuine issue of material fact is on the moving party. This Court liberally construes all disputed facts in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are drawn in favor of the nonmoving party. Summary judgment is improper if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.

*Harris v. State, ex rel. Kempthorne*, 147 Idaho 401, 404–05, 210 P.3d 86, 89–90 (2009) (internal citations and quotations omitted). Additionally, the date when a cause of action accrues is a question of law, which this Court reviews de novo when there are no disputed issues of material fact. *Id.* at 405, 210 P.3d at 90.

## III. ANALYSIS

Greystone brought claims for inverse condemnation under both the Idaho Constitution and the United States Constitution. The district court dismissed Greystone's state law claim on four separate grounds: (1) Greystone failed to present a timely notice of claim to McCall as required by I.C. § 50-219 and I.C. § 6-906; (2) the four-year statute of limitations under I.C. § 5-224 bars the claim; (3) Greystone failed to exhaust its administrative remedies; and (4) the conveyance was voluntary. The district court dismissed Greystone's federal claim because: (1) the claim was not ripe under the two-part *Williamson County* test and (2) the two-year statute of limitations barred the claim.

**A. The district court did not err in concluding that Greystone's claim to recover the cost of constructing improvements for the nine lots was encompassed in its claim to recover the value of those lots.**

3

Greystone argues that it sufficiently pleaded two takings claims in its amended complaint: (1) an inverse condemnation claim for the value of the nine lots and (2) an inverse condemnation claim for the money spent to construct improvements to the nine lots. Greystone contends that these claims are distinct because they give rise to separate damages and accrued at different times for the purpose of calculating the statute of limitations.

Greystone's Amended Complaint lays out the claim to recover for the improvements made to the lots separately from the claim to recover for the lots themselves. In describing the nature of the action, Greystone stated that it sought three things: (1) a declaration that requiring the conveyance of lots to meet the community housing requirement was unlawful; (2) reimbursement for the deeded lots; and (3) reimbursement for utilities and roadway improvements. In its prayer for relief for inverse condemnation, Greystone addressed the conveyance of the nine lots and the improvements to the nine lots in separate paragraphs, although they were both addressed under the same heading. However, just because Greystone specifically laid out that it sought to recover for the cost of constructing improvements does not necessarily mean that it constituted a separate claim. If the obligation to construct improvements to the nine lots arose at the same time as the obligation to convey the nine lots, then the cost of constructing improvements would simply be an element of damages for Greystone's claim to recover for the conveyance of the nine lots.

In support of its argument that the obligation to construct roadway improvements arose independently of its obligation to convey the nine lots, Greystone points to an e-mail exchange between Roger Millar, McCall's former Deputy City Manager, and Michelle Groenvelt, McCall's Community Development Director. In the e-mail exchange Groenvelt made the following inquiry:

> The question came up where in writing did it say the applicant is responsible for road improvements on McCall Avenue. I searched the file and did not find anything in the findings or development agreement. Do you know of any written documentation of this requirement? My thought is the Greystone Village I, II, and III were considered one project and therefore required to make all infrastructure improvements. The construction drawings/final plat show these improvements.

Millar responded that:

> Greystone Village subdivided the property and then gave platted lots to the City. Part of subdivision is providing infrastructure to the lots being created. The engineering plans reflect this. It was theirs to do when they planned on selling the lots and still theirs to do with the donation.

4

Despite Groenvelt's statements that she did not find anything in the Development Agreement regarding an obligation to construct road and utility improvements, this obligation was indeed spelled out in the Development Agreement. Article III of the Agreement provides that "Greystone Village shall be responsible for 100% of the cost of construction of the Sewer Service Connections." Article IV states that "Greystone Village shall be responsible for 100% of the cost of construction of the Fire Hydrants." And finally, Article V states that the applicant shall construct "all street signs" and "submit construction drawings for street, drainage, water, sewer, and landscaping improvements." Moreover, there is evidence in the record that this obligation was contemplated leading up to the signing of the Development Agreement. When Greystone Village was originally platted, Greystone committed to provide the usual road improvements (storm drains and street signs) and utility connections (water, sewer, and fire hydrants) required for all subdivisions. The availability of water and sewer hook-ups was also contemplated in the appraisal Greystone prepared of its conveyance to McCall.

Therefore, based on the record before this Court, the parties did contemplate an obligation on Greystone's part to construct improvements to the nine lots when they signed the Development Agreement. We affirm the district court's conclusion that Greystone's claim to recover the cost of constructing improvements arose at the same time and was encompassed within its claim to recover the value of the nine lots. The cost of constructing improvements was just an element of damages in Greystone's claim to recover the value of the nine lots.

**B. The district court did not err in dismissing Greystone's state law claim on summary judgment.**

The district court dismissed Greystone's claim under the Idaho Constitution on four separate grounds and Greystone appeals the dismissal of its claim on each of these grounds. Because we hold that Greystone's state law takings claim is barred due to Greystone's failure to present a timely notice of claim, we will not address the alternate grounds the district court gave for dismissing this claim on summary judgment.

Greystone admits that more than 180 days passed since its state law takings claim accrued in spring of 2006 and when it claims it provided McCall notice of its inverse condemnation demand on November 12, 2009. However, Greystone contends that a new claim arose when McCall passed Resolution 08-11 on April 24, 2008, which provided a refund for community housing fees illegally collected under Ordinance No. 820. By filing a timely refund request form with McCall in accordance with this Resolution, Greystone argues that it provided

5

McCall with timely, sufficient notice under the Idaho Tort Claims Act [ITCA] of its state inverse condemnation claims.

Idaho Code § 50-219 states, "All claims for damages against a city must be filed as prescribed by chapter 9, title 6, Idaho Code." Idaho Code § 6-906 requires that a notice of claim against a city be filed with the city clerk or secretary within 180 days from the date the claim arose or reasonably should have been discovered, whichever is later. Greystone concedes that section 6-906's notice requirement applies to its state law claim and that more than 180 days passed after this claim initially accrued. Thus, Greystone failed to provide sufficient notice of its state law inverse condemnation claim, unless the passage of Resolutions 08-11 and 09-10 created a new claim under which Greystone could recover for inverse condemnation.

McCall enacted Resolution 08-11 on April 24, 2008, after the district court found Ordinance 820 to be an illegal tax. This Resolution authorized refunds of the community housing fees actually paid under Ordinance 820. Resolution 09-10, enacted on November 4, 2009, set a final deadline of December 31, 2009, for eligible entities to request a refund of fees under Resolution 08-11. Greystone does not explain how either of these resolutions creates a new cause of action.

The passage of Resolution 08-11 does not create a new cause of action for Greystone to recover for inverse condemnation. "This Court has held that knowledge of facts which would put a reasonably prudent person on inquiry is the equivalent to knowledge of the wrongful act and will start the running of the 180 days." *BHA Investments, Inc. v. City of Boise*, 141 Idaho 168, 174, 108 P.3d 315, 321 (2004) (quotations omitted). Greystone was aware of all of the facts giving rise to its takings claim long before the passage of Resolution 08-11. The only claim that Greystone has arising out of Resolution 08-11 is an action to review McCall's denial of Greystone's refund request. Moreover, even if the passage of Resolution 08-11 somehow allowed Greystone's takings claim to accrue again, Greystone waited more than 550 days after the Resolution's passage to file a refund request with McCall. We decline to address whether the refund request even constituted sufficient notice of Greystone's taking claim under the ITCA.

Therefore, we affirm the dismissal of Greystone's state law takings claim on summary judgment on this ground without addressing the remaining alternate grounds on which the district court based its dismissal.

**C. The district court did not err in dismissing Greystone's federal law takings claim on summary judgment.**

The district court held that Greystone's federal takings claim was not ripe under the test laid out in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). Even if the claim was ripe for review, the district court held that it was barred by the two-year statute of limitations.

Under the test laid out in *Williamson County*, a challenge to an alleged regulatory taking is not ripe unless two conditions are satisfied. First, the action alleged to constitute the taking must be "a final decision regarding how [the owner] will be allowed to develop its property." *Id.* at 190. An action is not final "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186. This requirement is automatically satisfied at the time of a physical taking. *Daniel v. Cnty. of Santa Barbara*, 288 F.3d 375, 382 (9th Cir. 2002). Second, a plaintiff must have sought compensation for the alleged taking through available state procedures. *Williamson Cnty.*, 473 U.S. at 194. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195.

Greystone argues that McCall reached a final, reviewable decision under *Williamson County*'s first ripeness test because the conveyance of the nine lots was a physical taking. The Ninth Circuit has held that even where exactions were associated with the regulatory process, if the exactions amounted to a physical taking, the finality requirement was automatically satisfied at the time of the exaction. *Daniel*, 288 F.3d at 382. The problem with McCall's argument that its conveyance was an exaction amounting to a physical taking is that the ordinance requiring a community housing contribution, Ordinance No. 819, did not apply to Greystone. Even if McCall suggested a contribution was necessary for the approval of Greystone's development plan, Greystone proposed, executed, and carried out the Development Agreement that offered the conveyance as a contribution. Because the Ordinance did not apply to Greystone and Greystone never protested the conveyance, McCall never reached a final decision regarding the application of the Ordinance to the property at issue.

This case is similar to *Penn Central Transportation Company v. New York City,* 438 U.S. 104 (1978). In that case, the Court declined to find that the application of New York City's Landmarks Preservation Law to Grand Central Terminal effected a taking because, although the

7

Landmarks Preservation Commission rejected a plan for a 50-story office building above the terminal, the property owners failed to submit any alternate plans for approval. *Id.* at 136–37. Therefore, the Supreme Court concluded that the Commission's decision was not final because it was not clear whether the Commission would deny approval for all uses that would enable the plaintiffs to derive economic benefit from the property. *Id.* at 137. Similarly, without proposing an alternate development application or otherwise contesting the conveyance of the nine lots, it is unclear whether McCall would have denied approval of Greystone's development application without the conveyance of the nine lots since Ordinance No. 820 did not apply to Greystone.

Even if the conveyance amounted to a final decision, Greystone's claim did not meet the second prong of the ripeness test. In *Williamson County*, the Court held that because a state statute allowed recovery through inverse condemnation where the taking is effected by restrictive zoning laws, the landowner's taking claim was premature until it had utilized the statute's procedure or shown that the procedure was inadequate. 473 U.S. at 196–97.

Greystone filed permit applications with McCall for a subdivision and a planned unit development. Under the Local Land Use Planning Act (LLUPA) provisions dealing with subdivision permits and planned unit development permits, *see* I.C. §§ 67-6513, 67-6515, Greystone could have requested a regulatory taking analysis pursuant to I.C. § 67-8003. S.L.2003, ch. 142, §§ 24. Idaho Code section 67-6513 specifically states, "Denial of a subdivision permit or approval of a subdivision permit with conditions unacceptable to the landowner may be subject to the regulatory taking analysis provided for by section 67-8003, Idaho Code, consistent with the requirements established thereby." "[B]ecause the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied." *Williamson Cnty.*, 473 U.S. at 194 n. 13. If Greystone had found the conveyance of the nine lots unacceptable, it could have sought a regulatory taking analysis under I.C. § 67-8003. *See Buckskin Props., Inc. v. Valley Cnty.,* 154 Idaho 486, ___, 300 P.3d 18, 24 (2013). Greystone failed to seek just compensation under I.C. § 67-8003 and it has not shown that this statute's procedures were inadequate. Having failed to timely bring a state claim for just compensation, Greystone has forfeited its federal claim. *See Harbours Pointe of Nashotah, LLC v. Vill. of Nashotah*, 278 F.3d 701, 706 (7th Cir. 2002) ("An unexcused failure to exhaust adequate statutory remedies forfeits a claimant's rights."); *Pascoag Reservoir & Dam, LLC v. Rhode Island*, 337 F.3d 87, 94 (1st Cir. 2003).

8

Greystone's claim fails to meet both of the ripeness requirements set forth in *Williamson County*. Because Greystone has waived its federal takings claim, we affirm the district court's dismissal of this claim.

**D. The district court did not need to address the equitable defenses McCall asserted, nor does this Court need to address them on appeal.**

McCall argues that equitable defenses such as unjust enrichment and laches offer an alternate ground to dismiss Greystone's federal and state takings claims. The district court correctly concluded that based on its ruling, it need not address these equitable defenses. Because we affirm the district court's decision, we also decline to address McCall's equitable defenses.

**E. McCall is not entitled to attorney fees on appeal and was not entitled to them below.**

McCall sought attorney fees below under both I.C. §§ 12-117 and 12-121. The district court declined to award McCall attorney fees concluding that Greystone did not pursue this case without a reasonable basis in fact or law. McCall argues that the district court abused its discretion in declining to award attorney fees. McCall further contends that it is entitled to attorney fees on appeal under both statutes.

A district court's determination not to award attorney fees is within the court's sound discretion, and will not be disturbed on appeal unless there is an abuse of discretion. *City of Osburn v. Randel*, 152 Idaho 906, 908, 277 P.3d 353, 355 (2012). In declining to award McCall attorney fees, the district court stated:

> This case presented a number of challenging legal issues regarding which statute of limitations applied, when the cause of action accrued, and whether the Plaintiffs failed to exhaust their administrative remedies as set out in the case of *KMST, LLC v. County of Ada*, 138 Idaho 577 (2003). Although the Court ultimately ruled in the Defendant's favor, the Court cannot say that the Plaintiffs pursued this case without a reasonable basis in fact or law.

As the district court noted, this litigation involved a number of complex legal issues. The district court carefully considered whether attorney fees were warranted below and did not act outside the bounds of its authority in declining to award them. Thus, the court did not abuse its discretion in denying McCall's petition for fees under both I.C. §§ 12-117 and 12-121 after finding that Greystone did not act without a reasonable basis in law or fact.

Nor is McCall entitled to attorney fees on appeal under either I.C. §§ 12-117 or 12-121. Both statutes are expressly applicable to McCall, but only provide for the award of attorney fees to the prevailing party. *Syringa Networks, LLC v. Idaho Dep't of Admin.*, No. 38735, 2013 WL

9

1276493, at *12 (Idaho Mar. 29, 2013). In this appeal, all of the issues Greystone raised are resolved in favor of McCall, while all of the issues McCall raised in its cross-appeal are resolved in favor of Greystone. Because McCall and Greystone have both prevailed in part on appeal, McCall is not the prevailing party. *Tapadeera, LLC v. Knowlton,* 153 Idaho 182, 189, 280 P.3d 685, 692 (2012). Accordingly, we decline to award McCall attorney fees on appeal under either I.C. §§ 12-117 or 12-121.

## IV. CONCLUSION

We affirm the district court's decision to grant McCall's motion for summary judgment and its decision denying McCall's request for attorney fees. No attorney fees are awarded on appeal. Costs to Respondent.

Justice EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**