# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 45181

NORTH IDAHO BUILDING
CONTRACTORS ASSOCIATION, an
Idaho non-profit corporation; TERMAC
CONSTRUCTION, INC., an Idaho
corporation, on behalf of itself and all
others similarly situated,

  Plaintiffs-Respondents, Cross
  Appellants,

and

JOHN DOES 1-50, whose true names are
unknown,

  Plaintiffs,

v.

CITY OF HAYDEN, an Idaho municipality,

  Defendant-Appellant-Cross
  Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, August 2018 Term

Filed: December 28, 2018

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. Cynthia K.C. Meyer, District Judge.

The judgment of the District Court is <u>vacated</u> and this case is <u>remanded</u> to the District Court to consider evidence on whether the 2007 Cap Fee follows Idaho law. Costs, but not attorney fees, awarded to the City on appeal.

Hawley Troxell Ennis & Hawley LLP, Boise, attorneys for appellant. Merlyn W. Clark argued.

Risch Pisca, PLLC, Boise, attorneys for respondent. Jason S. Risch argued.

---

BEVAN, Justice

## I.

### NATURE OF THE CASE

This case was brought by the North Idaho Building Contractors Association, Termac Construction, Inc., and other class members (collectively, "NIBCA"), to declare a sewer

1

connection/capitalization fee the City of Hayden enacted in 2007 (the "2007 Cap Fee"), to be an impermissible tax. The action was originally dismissed on the City's motion for summary judgment; but, on appeal this Court vacated the judgment of the district court and remanded the case for further proceedings because the record did not contain sufficient evidence to establish that the 2007 Cap Fee complied with controlling Idaho statutes and case law. *See N. Idaho Bldg. Contractors Ass'n v. City of Hayden*, 158 Idaho 79, 81, 343 P.3d 1086, 1088 (2015) ("*NIBCA I*"). On remand, the parties filed cross motions for summary judgment and the district court found that the 2007 Cap Fee was an impermissible tax and taking of property without just compensation in violation of federal takings law. In doing so, the district court refused to consider expert evidence propounded by the City which opined that the 2007 Cap Fee complied with the applicable Idaho legal standards and was reasonable.

The district court subsequently ruled on stipulated facts that NIBCA was entitled to damages in the amount paid above $774 per connection, together with interest, costs, and attorney fees. The City timely appealed the district court's refusal to consider its evidence and NIBCA cross-appealed the award of damages. We vacate the judgment because the district court improperly refused to consider the City's evidence on remand.

## II.
### FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are set forth in *NIBCA I*. The City of Hayden provides sewer service to residents, and charges each customer a bi-monthly fee. *NIBCA I*, 158 Idaho at 80, 343 P.3d at 1087. The City also charges a one-time "sewer capitalization fee" for each new structure, whether residential or commercial, and for any addition to an existing commercial structure that will result in an increase in the volume of sewage generated. *Id*. The capitalization fee is charged when a building permit is issued. *Id*.

According to the City's administrator, "The City's portion of the sewer capitalization fee (the collection system component) for one [Equivalent Residence] was $580.00 during 2001 to 2005, $737.00 during 2005 to 2006, and $774.00 during 2006 and the first half of 2007." *Id*. The City raised the fee to $2,280 in June 2007. *Id*. Thereafter, NIBCA filed this action to have the fee declared unlawful because it was an impermissible tax rather than a fee for services. *Id*. The district court held that the 2007 Cap Fee was lawful and entered a judgment dismissing the complaint. *Id*. NIBCA appealed and this Court vacated the judgment and remanded the case for

2

further proceedings. *Id*. at 86, 343 P.3d at 1093. We noted that there were no facts in the record "showing that the fee was based upon the value of that portion of the existing City sewer system that the new user will be utilizing." *Id*. at 82, 343 P.3d at 1089.

The import of the *NIBCA I* holding was disputed on remand. The district court requested that the City and NIBCA submit briefing explaining each side's interpretation of this Court's decision. The City argued that *NIBCA I* was not dispositive of the case, but merely provided a framework for how the City was to properly calculate the fee charged. Accompanying the City's memorandum was an explanation of a new study conducted by Financial Consulting Services Group, Inc., (the "FCS study") that the City commissioned after *NIBCA I* to demonstrate the reasonableness of the 2007 Cap Fee. Conversely, NIBCA argued that this Court's decision resolved the action and the case was remanded solely to assess class certification and damages. On August 17, 2015, the district court entered a memorandum decision which held that *NIBCA I* merely vacated the order granting summary judgment, putting the case in the same posture it was in before the first appeal. As viewed by the district court at that time, *NIBCA I* was not dispositive of the case.

Based on the FCS study, the City filed a motion for summary judgment on September 18, 2015. The City maintained its position that this Court's intent on remand was for the parties to submit evidence to determine whether the amount of the 2007 Cap Fee was reasonable. NIBCA moved to exclude the FCS study, which the district court denied, recognizing that "[a]t the appropriate time and following the appropriate procedure the court will determine whether [the City's] new engineering study will convert [the City's] impermissible tax to a permissible fee." While the City's motion for summary judgment was still pending, NIBCA filed its own motion for summary judgment that argued: (1) the 2007 Cap Fee was inconsistent with Idaho law, and (2) the City cannot retroactively justify the 2007 Cap Fee through the FCS study.

On February 26, 2016, the district court entered a memorandum decision granting NIBCA's motion for summary judgment and denying the City's motion for summary judgment. Refusing to give the City's FCS study any weight, the district court held that the City had imposed the 2007 Cap Fee in order to expand the current system, rather than basing the 2007 Cap Fee on the portion of the system people were using. Thus, the City's 2007 Cap Fee constituted an impermissible tax. Relying on *Loomis v. City of Hailey*, 119 Idaho 434, 807 P.2d 1272 (1991) and what it called "three decades of decisions relating to the authority of a

3

municipality to impose a fee," the district court determined that it could not reach the issue of whether the 2007 Cap Fee was reasonable; instead, the district court held that its role was to determine whether the fee was authorized — and only if authorized, would the court determine whether the fee was reasonable. The district court then held that the fee was not authorized because this Court had resolved that issue in *NIBCA I*. The district court viewed *NIBCA I* as holding that "the fee was an impermissible tax enacted without authority and without basis in Idaho law." The court also concluded that it was bound by what it viewed to be a final decision by this Court that the City's stated basis for imposing the 2007 Cap Fee was invalid. Thus, the district court would not entertain any argument based on the City's FCS study.

On May 17, 2016, the City filed its third motion for summary judgment to address its affirmative defenses, which the district court granted in part and denied in part. The court held: (1) NIBCA's state law claims were barred because of their failure to comply with the Idaho Tort Claims Act (ITCA) and Idaho Code section 50-219; (2) NIBCA's federal claims were not barred despite the failure to comply with available state remedies; (3) any federal claims arising before the two-year statute of limitation (June 4, 2010) were barred; and (4) the City's equitable defenses were not appropriate because whether a benefit was conferred upon NIBCA by the City was largely in dispute. The City filed a motion for reconsideration. The district court denied all of the City's claims except it recharacterized the 2007 Cap Fee as a regulatory taking and vacated its prior decision in that regard. After analyzing the 2007 Cap Fee as a regulatory taking, the court determined that NIBCA's federal claims were still ripe.

In November 2016, the parties entered into a stipulation as to the undisputed facts, vacating the trial. The parties also filed another document entitled a "stipulation" about the admissibility of two affidavits; however, the body of the "stipulation" reveals that NIBCA objected to the admission of the affidavits. Even so, the district court approved the stipulation and vacated the trial, ordering that the parties submit additional briefing and closing arguments based on the stipulations.

On February 24, 2017, the district court entered a memorandum decision on the stipulated facts. The court noted that its "prior decisions [on summary judgment] have determined that the fee imposed by [the City] constituted an impermissible tax . . . ." Thus, the "trial" on the remaining issues was determined with the court's prior ruling as a foundational predicate: the City's 2007 Cap Fee was an impermissible tax, and NIBCA had a right to damages

4

for the City's unlawful taking. The court held NIBCA had a right to just compensation when the 2007 Cap Fee was paid because it was imposed without authority, which was "at its essence, a disguised tax." The district court determined that while the fee was impermissible, NIBCA had received something for its payment, so the district court held that NIBCA should be put in the same position it was in before the 2007 Cap Fee. The City was ordered to refund the difference between the impermissible tax paid and the prior lawful fee of $774.

The district court entered a judgment awarding NIBCA $729,403.58, plus post judgment interest to be calculated at a simple interest rate of 6.5%. The court also awarded NIBCA: (1) $219,707.77 in reasonable attorney fees; (2) $138.00 for costs as a matter of right; and (3) $838.78 in discretionary costs.

## III.

### STANDARD OF REVIEW

A motion for summary judgment shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Standards applicable to summary judgment require the district court and Supreme Court upon review, to liberally construe facts in the existing record in favor of the party opposing the motion, and to draw all reasonable inferences from the record in favor of the nonmoving party. If the record contains conflicting inferences or reasonable minds might reach different conclusions, a summary judgment must be denied. Summary judgment should be granted only if there is no genuine issue of material fact after the pleadings, depositions, admissions and affidavits have been construed in a light most favorable to the opposing party.

When an action will be tried before the court without a jury, the judge is not constrained to draw inferences in favor of the party opposing a motion for summary judgment but rather the trial judge is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts.

*Loomis v. City of Hailey*, 119 Idaho 434, 436–37, 807 P.2d 1272, 1274–75 (1991) (internal citations and quotations omitted).

When this Court reviews a district court's decision to grant or deny a motion for reconsideration, we use the same standard of review the lower court used in deciding the motion for reconsideration. *Liberty Bankers Life Ins. Co. v. Witherspoon, Kelley, Davenport & Toole, P.S.*, 159 Idaho 679, 686, 365 P.3d 1033, 1040 (2016) (citing *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012)). "Thus, when a motion to reconsider follows the grant of

summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Manwaring Investments, L.C. v. City of Blackfoot*, 162 Idaho 763, 773, 405 P.3d 22, 32 (2017) (internal quotation omitted).

The standard of review of a court's findings of fact is set forth in Idaho Rule of Civil Procedure 52(a):

> Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.

I.R.C.P. 52(a)(7). "In determining whether a finding is clearly erroneous this Court does not weigh the evidence. The Court inquires whether the findings of fact are supported by substantial and competent evidence." *KDN Mgmt., Inc. v. WinCo Foods, LLC*, 164 Idaho 1, 6, 423 P.3d 422, 427 (2018) (internal citation omitted).

## IV.

### THE DISTRICT COURT ERRED WHEN IT FAILED TO CONSIDER THE EVIDENCE PROPOUNDED BY THE CITY TO DEMONSTRATE THAT THE 2007 CAP FEE COMPLIED WITH IDAHO LAW.

In *NIBCA I,* this Court vacated the district court's grant of summary judgment in favor of the City and remanded the case. On remand the City commissioned the FCS study to demonstrate that the 2007 Cap Fee complied with *Loomis*. Nevertheless, the district court refused to consider that evidence. Instead, the district court held that it would not entertain any argument about whether the 2007 Cap Fee was a fee or a tax, citing *NIBCA I* as holding conclusively that "the fee was an impermissible tax enacted without authority and without basis in Idaho law." Thus, the district court gave no weight to the FCS study.

We hold that the district court erred by misreading this Court's holding in *NIBCA I*. While our opinion there referenced the error of a prior grant of summary judgment in the City's favor, we pointed out that the legal error was a lack of evidence in the record[1] to support the City's claim that its fee was assessed appropriately. *NIBCA I* was simply a reversal of a grant of summary judgment which had found that the City's 2007 Cap Fee was appropriate without adequate evidentiary support in the record. As we noted: "Because there is nothing in the record

---

[1] We referenced *NIBCA I* in *Manwaring*. In doing so, we inaccurately summarized *NIBCA I* as holding that "the capitalization fee was an unconstitutional tax because it did not represent any attempt to approximate actual use." *See* 162 Idaho at 772, 405 P.3d at 31. As noted herein, we did not issue such a holding in *NIBCA I* and we now disavow that statement.

showing that as of June 7, 2007, the sum of $2,280 was the actual cost of providing sewer service to a customer connecting to the City sewer system and there is no showing that the amount of the fee was based upon any such calculation, the fee was not authorized by Idaho Code section 63-1311(1)." *Id.* at 81, 343 P.3d at 1088. Thus, "the district court erred in holding [that the fee was authorized by Idaho Code section 63-1311(1)]." *Id.* We also recognized three additional times that the record lacked support for the City's contentions. *See id.* at 84, 343 P.3d at 1091.

While a trial court generally has discretion upon remand to "determine whether the existing record is sufficient, or should be supplemented, in order to make the required findings of fact and conclusions of law," *see Morgan v. New Sweden Irr. Dist.*, 160 Idaho 47, 51, 368 P.3d 990, 994 (2016), a trial court does not have discretion when determining whether evidence is relevant. *Alexander v. Stibal*, 161 Idaho 253, 268, 385 P.3d 431, 446 (2016). "As a consequence, this Court reviews a district court's decision on relevancy de novo." *Id.*

The trial court erred by limiting the evidence upon remand because of its misinterpretation of our prior decision in this case. *NIBCA I* was remanded for the *development of the record* to determine whether the NIBCA plaintiffs could make their claim and develop a record. *See* 158 Idaho at 87, 343 P.3d at 1094 (J. J. Jones, concurring).

The district court's initial ruling that the 2007 Cap Fee was an illegal tax colored its later decision on the merits, made on stipulated facts, without the benefit of the City's evidence. As a result, the judgment entered based on that erroneous legal conclusion is vacated and we remand this case for the parties to develop a record whether "the sum of $2,280 was the actual cost of providing sewer service to a customer connecting to the City sewer system." *Id.* at 81, 343 P.3d at 1088. By this holding we note and reiterate the following legal principles.

**A. When Rates, Fees, and Charges are Imposed Primarily for Revenue Raising Purposes They are Essentially Disguised Taxes**

"Under article 8, section 3 of the Idaho Constitution, the City is authorized to construct and maintain certain public works projects." *Manwaring*, 162 Idaho at 768, 405 P.3d at 27. "While . . . the Idaho Constitution permits municipal corporations to impose their own taxes, such power is limited by the taxing power authorized by the legislature." *Brewster v. City of Pocatello*, 115 Idaho 502, 503, 768 P.2d 765, 766 (1988). "[P]ursuant to [article 8, section 3] of the Constitution, the Idaho legislature enacted the Idaho Revenue Bond Act . . . codified at I.C. §

50-1027 through § 50-1042," *Manwaring*, 162 Idaho at 768, 405 P.3d at 27 (quoting *Loomis*, 119 Idaho at 438, 807 P.2d at 1276), to provide the means for local entities to finance operations. That said, if the rates, fees and charges are imposed mainly for revenue raising purposes, they are in essence disguised taxes and subject to legislative approval and authority. *Loomis*, 119 Idaho at 438, 807 P.2d at 1276. When a fee is calculated to meet a public need, instead of being based on of a user's actual consumption cost for that service, it creates a forced contribution and is properly regarded as a tax. *Alpert v. Boise Water Corp.*, 118 Idaho 136, 145, 795 P.2d 298, 307 (1990) (citing *Brewster*, 115 Idaho at 504, 768 P.2d at 767). A city may not impose a tax without specific legislative authority. *Brewster*, 115 Idaho at 503–04, 768 P.2d at 766–67.

**B. The Idaho Revenue Bond Act Provides Authority for Cities to Charge a New, One-time "Buy-in" Fee.**

The Idaho Revenue Bond Act provides that any city has power:

> To prescribe and collect rates, fees, tolls or charges, including the levy or assessment of such rates, fees, tolls or charges against governmental units, departments or agencies, including the state of Idaho and its subdivisions, for the services, facilities and commodities furnished by such works, or by such rehabilitated existing electrical generating facilities, and provide methods of collections and penalties, including denial of service for nonpayment of such rates, fees, tolls or charges.

I.C. § 50-1030(f).

In *Loomis v. Hailey*, this Court interpreted section 50-1030(f) to authorize a city to charge a new, one-time connection "buy-in" fee to the sewer and water system that can exceed the actual cost of physically connecting. 119 Idaho at 442, 807 P.2d at 1280. Indeed, this Court held that the buy-in fee could be used to "recover the costs of operating, maintaining, replacing, and depreciating the existing water and sewer systems and *any extensions thereof*." *Id*. at 444, 807 P.2d at 1282 (emphasis added). Thus, we have already held that cities like Hayden can legally assess buy-in fees when those fees are reasonably connected to the actual costs such additional users will engender. The correct amount is to be calculated "by dividing the net system replacement value by the number of users the system can support. The new user is charged the value of that portion of the system capacity that the new user will utilize at that point in time." *Id*. at 443, 807 P.2d at 1281. As we stated:

> The Idaho Revenue Bond Act authorizes the collection of sewer connection fees, *Schmidt v. Village of Kimberly,* 74 Idaho 48, 256 P.2d 515 (1953), and it is clear that so long as the fees collected pursuant to the Idaho

8

> Revenue Bond Act are allocated and budgeted in conformity with that Act they will not be construed as taxes. However, if fees are collected under the disguise of the Act *and allocated and spent otherwise*, then the fees are primarily revenue raising and will be construed as taxes. *Brewster v. City of Pocatello,* 115 Idaho 502, 768 P.2d 765 (1989).

*Id*. at 439, 807 P.2d at 1277 (emphasis added). Thus, the City here may be able to show that the fees were collected, allocated and spent in support of its sewer system; if it can do so, it will establish that the fees were appropriately charged.

In *Viking Construction, Incorporated. v. Hayden Lake Irrigation District*, this Court clarified *Loomis* and held that "for the connection fee to be an equity buy-in, it must be based upon *some calculation* designed to determine the value of that portion of the system that the new user will be utilizing." 149 Idaho 187, 194, 233 P.3d 118, 125 (2010), *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr*., 151 Idaho 889, 265 P.3d 502 (2011) (emphasis added). This limitation highlighted the important distinction between a city's power to spend money and the power to impose a fee or tax to raise money, but also noted that "the methodology used by [a public entity to] determine[ ] the amount of the connection fee is an issue of fact." *Id*. Thus, *Viking* parallels this case and supports our determination that such factual issues are to be developed upon remand.

We also distinguish this case from *Brewster*, where this Court had to determine whether a fee imposed by the City of Pocatello to restore and maintain the city roadways amounted to a permissible fee or an impermissible tax. 115 Idaho at 502–04, 768 P.2d at 765–67. The Court held that "[i]n a general sense a fee is a charge for a direct public service rendered to the particular consumer, while a tax is a forced contribution by the public at large to meet public needs." *Id*. at 505, 768 P.2d at 768. For these reasons, the benchmark for this fee versus tax analysis must begin with whether the funds are paid by users for services they are consuming. If so, the fee is lawful. *Id*. On the other hand, if the fees are found to be assessed for more general purposes, such fees are likely a tax and the city must have authority to impose such a tax from statute or Idaho's Constitution.

In *NIBCA I*, we held that the City flouted *Loomis* because

> the City did not calculate the fee by dividing the value of its current system by the number of users that system could support to determine the amount of the fee to be charged to each new user as an equity buy-in. Rather, it divided the estimated cost of increasing the size of the system from 5600 ER's to 14,550 ER's by the

9

increase in capacity that would result from the construction and then charged each new user a proportionate amount of the cost of that increase.

158 Idaho at 82, 343 P.3d at 1089.

Thus, we held that the City could not justify its 2007 Cap Fee because it was based on the estimated cost of the construction to extend the sewer service so that it could be used by those who would be connecting to the new enlarged system at some point in the future. *Id*. at 82, 343 P.3d at 1089. We recognized that this methodology was inconsistent with the standards set forth in *Loomis* or *Viking* because the City provided inadequate evidence to demonstrate that the 2007 Cap Fee was based on the value of that portion of the existing city sewer system that the new users could actually buy into. Ultimately, the defining issue in *NIBCA I* was that the City did not provide evidence that the 2007 Cap Fee was based on actual use. *Id*. at 84, 343 P.3d at 1091 ("There is nothing in the record showing that the fee of $2,280 was based upon the value of that portion of the system capacity that the new user will utilize at the point in time when the new user connects to the system."). That deficiency is yet to be remedied, but the City will have its opportunity to do so on remand.

### C. Allowing the City to Present Evidence that now Supports the 2007 Cap Fee Does Not Offend Notions of Fair Play and Justice.

The district court relied heavily on two conclusions in reaching its decisions at summary judgment and thereafter. First, it concluded this Court had ruled in *NIBCA I* that the 2007 Cap Fee was an impermissible tax; and second, it determined that allowing the City to go back now and present evidence supporting the amount of the fee charged in 2007 would amount to revisionist history, offending notions of fair play and justice. As the court stated:

> The implication of [the City's] argument is not lost on this court. [The City] concedes the cap fee was not calculated in accordance with the *Loomis* equity buy-in methodology. Yet [the City] contends that because the fee is reasonable based on the 2015 FCS study there is no harm. This court has rejected that position several times.

> The incongruity lies in the manner in which the fee was imposed. [The City] usurped legislative authority to impose a tax on a group of citizens to benefit the public at large. There has been nothing supplied to this court to demonstrate that [the City] had that authority. In the absence of such authority, [the City] asks this court to approve the conduct because eight years later [the City] has purportedly demonstrated that if it had employed the lawful methodology mandated by the *Loomis* Court, the amount it charged for the cap fee in 2007 and

2012 would have been the same or less. This court cannot be a safe harbor for the imposition of a tax without demonstrable authority to do so. The court cannot be a forum for the sanctioning of wrongful conduct. The ends cannot justify the means.

Moreover, this court is concerned with the implication of what [the City] proposes. The court does not want to chill the legitimate grievances of a citizenry when a municipality exceeds its statutory authority. Cases such as the one now before this court would not be brought if the court allowed a municipality to justify its wrongful conduct by doing years later what it should have done at the outset. Suits of this type would be futile based upon a municipality's ability to justify impermissible conduct simply by showing what they could have, should have, or might have done. The court cannot imagine a scenario where it would be proper to approve an impermissible tax on the basis that a municipality can demonstrate what it should have done. It offends the notions of fairness, justice, and it offends the Constitution.

While we recognize the potential implications and the policy concerns that appear to be offended by allowing the City to present its case supporting its fee in an ex post facto way, the timing of the City's determination is not a bar to its ability to present its case. Neither *Brewster*, nor any other case of this Court on this issue requires that a fee's "purpose" be conclusively established at the time it was imposed. The City's evidence, which must be construed in its favor as against NIBCA's motion for summary judgment, establishes that the City can make a case that the 2007 Cap Fee was reasonable when it was adopted, even though the method used to arrive at the amount of the fee was flawed. In addition, as the City notes, the purpose and intent of the increased fee was not to generate revenue for the City; the fee was collected and placed in a special fund, designated for sewer system obligations. Thus, unlike the fee in *Hill-Vu Mobile Home Park v. City of Pocatello*, 162 Idaho 588, 593, 402 P.3d 1041, 1046 (2017), which was a revenue-generating payment in lieu of taxes charge, and unlike the fee in *Brewster*, 115 Idaho at 505, 768 P.2d at 768, which held no relationship to the regulation of travel over its streets, the fee here, as construed in the City's favor, was designed to offset the costs of the sewer system and to make it as close to self-supporting as possible in accordance with the Revenue Bond Act. The Act requires that Hayden's sewer system "be and always remain self-supporting." I.C. § 50-1032.

Idaho Code § 50-1033 specifically allows a municipality to use revenues collected from users of the system to "provide for all expenses of operation, maintenance, *replacement and depreciation* of such works ... including *reserves therefor;* ... and (e) provide a reserve for improvements to such works...." In

11

addition, I.C. § 50-1032 requires the system to be "self-supporting" and allows
reserves to be accumulated for maintenance and rehabilitation of the system.

*Loomis*, 119 Idaho at 440, 807 P.2d at 1278 (emphasis in original). Municipalities may thus "prescribe and collect rates, fees, tolls, or charges . . . for the services, facilities and commodities furnished by such works . . . ." I.C. § 50-1030(f).

The City was precluded from establishing a *legal, even if tardy,* basis for the fee here. In not allowing the City to pursue its case the district court erred. Allowing its determination to stand could lead to a windfall to developers at taxpayer expense. The FCS study indicated that the $2,280 fee was less than the actual cost for new users to connect to the system; this was sufficient evidence to withstand summary judgment. Ordering the City to reimburse NIBCA an amount exceeding $700,000 would require taxpayers in general to foot that bill.

Thus, the touchstone of this analysis is whether the fees were charged and "allocated and spent other[]" than for the public works project at issue, here the Hayden City sewer system. *Loomis*, 119 Idaho at 439, 807 P.2d at 1277. In addition, another important fact is whether the funds are paid by users for services they are consuming. If so, the fee is lawful. *Brewster*, 115 Idaho at 505, 768 P.2d at 768.

The City erroneously failed to follow the *Loomis* criteria in establishing the fee in the first instance. Even so, because of the reversal of summary judgment in *NIBCA I*, it sought to justify the amount of its fee based on the reality that the cost in applying the *Loomis* and *Viking* methodology *exceeded* the amount it charged for the fee. It was not allowed to make that case. Thus, while the City originally relied on faulty logic in coming to the amount of the 2007 Cap Fee, using the *Loomis* criteria could allow the City to establish that its fee was in fact an authorized, lawful fee. The district court must then determine whether that fee is reasonable given the totality of the facts in the record.

The City at oral argument requested that this Court offer guidance to settle the proper legal framework for cities making these financial determinations; however, we have already done so in *Loomis and Viking*. Beyond that,

> [i]t is not the province of this Court to determine how a municipality should allocate its fee and rate system. So long as the fees and rates charged conform to the statutory requirements and are reasonable, the fees, rates and charges will be upheld. The fees, rates and charges imposed by the municipality must be

12

reasonable and produce sufficient revenue to support the system at the lowest possible cost as required by the Idaho Revenue Bond Act.

*Loomis*, 119 Idaho at 442, 807 P.2d at 1280.

We hold that the district court erred when it failed to consider the FCS study. As a result we vacate and remand the case so that the district court can consider whether evidence demonstrates the 2007 Cap Fee represented an amount equal to, or less than the cost of actual use, rather than an impermissible tax to expand the system. It is not for this Court to consider whether the FCS study can accomplish this upon remand; our references to what it could show or does show at this point are based solely on our recognition that the FCS was sufficient evidence to withstand NIBCA's motion for summary judgment. We vacate the judgment and remand the case with instructions for the district court to permit both sides to present evidence on whether the 2007 Cap Fee complies with Idaho law. Since we vacate the judgment, we likewise vacate the award of attorney fees to NIBCA.

## V.
### ADDITIONAL ISSUES PRESENTED ON APPEAL

Both parties have raised additional issues on appeal. "Where an appellate court reverses or vacates a judgment upon an issue properly raised, and remands for further proceedings, it may give guidance for other issues on remand." *Urrutia v. Blaine Cnty.*, 134 Idaho 353, 359, 2 P.3d 738, 744 (2000) (quoting *Price v. Payette Cnty. Bd. of Cnty. Comm'rs*, 131 Idaho 426, 431, 958 P.2d 583, 588 (1998)). In offering guidance, however, we are aware that such guidance should only be given on issues that are absolutely necessary, and regarding issues that have a practical effect on *this appeal*; otherwise, we would be offering an impermissible advisory opinion cloaked as "guidance." *Cf. State v. Manzanares*, 152 Idaho 410, 419, 272 P.3d 382, 391 (2012) (issues raised on appeal about dismissed charges are moot and addressing such issues would be to offer an advisory opinion).

We therefore choose to address the arguments raised by the parties which are necessary to resolution of this case in future proceedings. Because we have vacated the judgment awarding damages, the amount of damages to award, if any, will be an open question upon remand. "It is the province of the district court—and not this Court—to weigh conflicting evidence and testimony and to judge the credibility of the witnesses," *City of Meridian v. Petra Inc.*, 154 Idaho 425, 452, 299 P.3d 232, 259 (2013) (internal citation omitted), in making damage calculations.

13

We decline to perform such calculations on appeal. For similar reasons, the City's argument on the attorney fee award to NIBCA is rendered moot and will not be discussed further.

**A.**     **The district court correctly held that NIBCA's federal claims were not barred despite NIBCA's failure to file a notice of claim under the ITCA or seek review under the Regulatory Takings Act.**

The City asserts that the district court erred by ruling that NIBCA's federal claims were ripe. It claims that NIBCA violated the two-prong test set forth in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) because: (1) NIBCA did not obtain a final decision from the City because they could have sought a regulatory takings review of the 2007 Cap Fee; and (2) NIBCA failed to pursue state claims timely by filing a notice of claim under the ITCA or seeking review under the Regulatory Takings Act.

In *Williamson County*, the United States Supreme Court created a two-part test to determine whether a takings claim against a state was ripe. *Williamson County*, 473 U.S. at 186. The first prong requires "the government entity charged with implementing the regulations has reached a final decision." *Id*. However, in *Yee v. City of Escondido, California*, the United States Supreme Court held that the first prong of *Williamson County* does not apply to facial challenge cases:

> As a preliminary matter, we must address respondent's assertion that a regulatory taking claim is unripe because petitioners have not sought rent increases. While respondent is correct that a claim that the ordinance effects a regulatory taking as applied to petitioners' property would be unripe for this reason, petitioners mount a facial challenge to the ordinance. They allege in this Court that the ordinance does not substantially advance a legitimate state interest no matter how it is applied. As this allegation does not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated, petitioners' facial challenge is ripe.

503 U.S. 519, 533–34 (1992) (internal citations and quotations omitted). Here, NIBCA's claim is for declaratory relief, which is a facial challenge. Thus, our analysis will turn on whether NIBCA can satisfy the second prong.

The second prong of *Williamson County* requires the party alleging the taking to pursue any available state remedy and be denied relief by the state. 473 U.S. at 194–95. This prong pertains to the denial of just compensation before there can be a constitutional violation. Although the aggrieved party does not have to seek review of the decision that precluded the

14

taking, it must seek compensation through available remedies. *Id*. at 195, n. 13. ("Exhaustion of review procedures is not required. As we have explained, however, because the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a [section] 1983 action.").

Applying the *Williamson County* test, courts have distinguished between the requirement to exhaust all review procedures versus the requirement to utilize procedures to obtain compensation. 473 U.S. at 195. *See Liberty Mut. Ins. Co. v. Brown*, 380 F.3d 793, 796 (5th Cir. 2004) ("the exhaustion of state administrative remedies is not an independent federal law prerequisite to a federal takings claim."); *see also DLX, Inc. v. Kentucky*, 381 F.3d 511, 518 (6th Cir. 2004) ("exhaustion is never required in a § 1983 case . . . and that there is no exception for takings claims."); *Alto Eldorado P'ship v. Cnty. of Santa Fe*, 634 F.3d 1170, 1177 (10th Cir. 2011) (holding ripeness under the second prong of *Williamson County* applies only to state procedures for compensation and does not apply "if a procedure for compensation is not available or compensation is otherwise foreclosed.").

The purpose of Idaho's Regulatory Takings Act is to provide a review process to be used by local governments to determine whether a proposed action would result in a taking of private property without due process of law. I.C. § 67-8001. In *Alpine Village Co. v. City of McCall*, this Court considered whether plaintiff's federal takings claims for real property were barred based on failure to seek compensation through available state remedies. 154 Idaho 930, 303 P.3d 617 (2013). The Court determined that because the plaintiff failed to use the statutory remedy that provided for the taking of real property under Local Land Use Planning Act ("LLUPA"), its federal claims were barred. Similarly, in *Hehr v. City of McCall*, this Court held that a developer's takings claim against the City of McCall failed the *Williamson County* test because he failed to seek compensation under available state remedies, to wit the Regulatory Takings Act. 155 Idaho 92, 98, 305 P.3d 536, 542 (2013) (citing I.C. § 67-8003). As for the second prong, this Court held that

> a plaintiff must have sought compensation for the alleged taking through available state procedures. *Williamson Cnty*., 473 U.S. at 194, 105 S.Ct. 3108. "[I]f a State provides an adequate procedure for seeking just compensation, the property

15

owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id*. at 195, 105 S.Ct. 3108.

*Id*. at 97, 305 P.3d at 541.

It has also been established that notice-of-claim requirements imposed by state law do not apply to federal claims. *See Felder v. Casey*, 487 U.S. 131 (1988). "State courts simply are not free to vindicate the substantive interests underlying a state rule of decision at the expense of the federal right." *Id*. at 152. In *BHA Investments, Inc. v. City of Boise*, this Court held:

> A state's notice-of-claim statute which provides that no action may be brought or maintained against a state government subdivision unless claimant provides written notice within a certain period of time is preempted when a federal civil rights action is brought in state court. Therefore, the failure to comply with the notice requirements of the Idaho Tort Claim Act does not bar their claim based upon the Takings Clause in the Constitution of the United States.

141 Idaho 168, 175–76, 108 P.3d 315, 322–23 (2004).

Here, the City argued that NIBCA's federal claims were not ripe under the second prong of *Williamson County* because NIBCA: (1) failed to file a timely notice of claim under the ITCA; and (2) failed to seek review under the Regulatory Takings Act. It is well established under *Williamson County* that "a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State." *Williamson County*, 473 U.S. at 195.

As for the City's first claim, this Court specifically held in *BHA Investments* that the failure to comply with notice requirements of the ITCA cannot serve as a bar for federal takings claims. *See BHA Investments*, 141 Idaho at 175–76, 108 P.3d at 322–23. The district court thus correctly concluded that NIBCA's failure to comply with the ITCA did not bar its federal takings claim.

The City's argument that NIBCA's federal takings claim is barred because it did not seek review under the Regulatory Takings Act also fails. In denying the City's motion for reconsideration the district court correctly concluded that *Alpine Village* and *Hehr* were distinguishable from this case because they involved a taking of real property. When NIBCA filed its complaint alleging its federal takings claim the Regulatory Takings Act was limited to owners of real property:

16

Upon the written request of an *owner of real property* that is the subject of such action, such request being filed with the clerk or the agency or entity undertaking the regulatory or administrative action not more than twenty-eight (28) days after the final decision concerning the matter at issue, a state agency or local governmental entity shall prepare a written taking analysis concerning the action.

I.C. § 67-8003(2) (2003 Idaho Laws Ch. 141 (H.B. 256) (emphasis added))[2]. Thus, NIBCA was not required to, nor could it, seek compensation under the Regulatory Takings Act. NIBCA did not have to use any state remedies that may be considered analogous to the Regulatory Takings Act or the LLUPA. As a result, the district court did not err when it allowed NIBCA's federal takings claim to proceed.

**B.      The district court abused its discretion when it rejected the City's equitable defenses of unjust enrichment and quantum meruit.**

The City also argues that the district court erred when it rejected the City's equitable defenses of unjust enrichment and quantum meruit because NIBCA received a benefit from the expenditure of the 2007 Cap Fee on sewer infrastructure, i.e., that each property was hooked up to the City's sewer system and could not have been developed without such a hookup. The City asserts that if NIBCA were able to recover money after receiving the benefit of having each home built, hooked up to the sewer, and sold, it would be unjustly enriched. The City also argues that its conduct in adopting the 2007 Cap Fee did not amount to "inequitable, unfair and dishonest, or fraudulent and deceitful conduct;" thus, the district court erred by holding the doctrine of unclean hands precluded the City's equitable defenses.

"Unjust enrichment occurs where a defendant receives a benefit which would be inequitable to retain without compensating the plaintiff to the extent that retention is unjust." *Vanderford Co. v. Knudson*, 144 Idaho 547, 557, 165 P.3d 261, 271 (2007). The elements for unjust enrichment are that "(1) a benefit is conferred on the defendant by the plaintiff; (2) the defendant appreciates the benefit; and (3) it would be inequitable for the defendant to accept the benefit without payment of the value of the benefit." *Teton Peaks Inv. Co., LLC v. Ohme*, 146 Idaho 394, 398, 195 P.3d 1207, 1211 (2008). Quantum meruit is the appropriate recovery under a contract implied in fact. *Peavey v. Pellandini*, 97 Idaho 655, 658, 551 P.2d 610, 613 (1976). A

---

[2] In 2016, the Idaho Legislature amended Idaho Code section 67-8003 to apply to "private property" rather than limiting the Regulatory Takings Act to "real property." That said, whether NIBCA could have sought compensation under the current version of the statute is not at issue for purposes of this appeal.

17

contract implied in fact exists where there is no express agreement but the parties' conduct evidences an agreement. *Id*. (quoting *Continental Forest Prod., Inc. v. Chandler Supply Co.*, 95 Idaho 739, 518 P.2d 1201 (1974)).

The doctrine of unclean hands permits a trial court to deny equitable relief to a party "on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy at issue." *Hoopes v. Hoopes*, 124 Idaho 518, 522, 861 P.2d 88, 92 (Ct. App. 1993). It is within the discretion of the court to evaluate the relative conduct of the parties and determine whether the conduct of the party seeking equitable relief should, because of all the circumstances, preclude application of the equitable relief requested. *Curtis v. Becker*, 130 Idaho 378, 383, 941 P.2d 350, 355 (Ct. App. 1997). The test for an abuse of discretion is "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

The district court's denial of the City's equitable defenses was twofold. First, the district court held that whether the City conferred a benefit on NIBCA was a matter in dispute, making summary judgment inappropriate. We agree; having vacated the judgment, the issue is again ripe for consideration by the trial court given our holding here about the City's facts to support its fee. The district court's holding that the party benefitting from the 2007 Cap Fee was not the current user, but was the future user who would benefit from the expansion of the sewer system is vacated and will be open for reconsideration upon remand.

Second, in its memorandum decision on the City's motion to reconsider, the district court held that the City's equitable defenses were barred through the doctrine of unclean hands. The City conceded that when the 2007 Cap Fee was enacted it did not follow the proper analysis required by Idaho law. This supports the district court's finding that the impermissible conduct of the City barred its equitable defenses of unjust enrichment and quantum meruit. *See Hoopes*, 124 Idaho at 522, 861 P.2d at 92 (The doctrine of unclean hands permits a trial court to deny equitable relief to a party "on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy at issue."). Since we have vacated the judgment and the underpinnings of the court's conclusion regarding unclean hands, we likewise

find that the court abused its discretion in making the unclean hands determination. This matter is also to be revisited upon remand.

**C.      The district court did not abuse its discretion when it applied a simple interest rate to calculate the damages that resulted from NIBCA's federal takings claim**

While we have vacated the judgment and thus the interest award as well, we will address this issue should it become relevant on remand. NIBCA raises the issue of whether the district court abused its discretion in using simple, rather than compound, interest to determine the amount of post judgment interest that would make NIBCA whole.

Just compensation has been held to be fair market value at the time of taking, plus interest from that date to the date of payment. *Albrecht v. United States*, 329 U.S. 599, 602 (1947). In federal takings claims "compound interest may more nearly fit with the policy to accomplish complete justice as between the plaintiff and the United States under the just compensation clause of the Fifth Amendment." *ITT Corp. v. United States*, 17 Cl. Ct. 199, 234 (1989) (citing *Waite v. United States*, 282 U.S. 508 (1931)). Thus, full compensation for a delayed payment has been held to include an award of compound interest. *Id*. at 240. However, courts in Idaho are averse to awards of compound interest. *Holladay v. Lindsay*, 143 Idaho 767, 770, 152 P.3d 638, 641 (Ct. App. 2006); *see also Doolittle By & Through Doolittle v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 805, 814, 919 P.2d 334, 343 (1996) "(Prejudgment interest is not compounded.").

In *Stanley v. McDaniel*, this Court addressed whether state or federal law applied to a federal law claim brought in state court. 134 Idaho 630, 7 P.3d 1107 (2000). We recognized that procedural matters are governed by Idaho law even if the claim was made under federal law, whereas Idaho courts are required to apply federal substantive law. *Id*. at 632, 7 P.3d at 1109. Ultimately, we characterized post-judgment interest as a procedural matter; thus, state law was applicable. *Id*. at 633, 7 P.3d at 1110.

Despite the fact that NIBCA prevailed on its federal takings claim, the district court correctly applied state law when calculating the interest rate. NIBCA does not appeal the 6.5% interest rate applied by the district court. We hold that the district court did not abuse its discretion when it applied a simple interest rate to NIBCA's federal takings claim.

**D.      Neither party is entitled to attorney fees on appeal.**

19

The City requests attorney fees on appeal under Idaho Code section 12-120(3). On the other hand, NIBCA requests attorney fees on appeal under 42 United States Code section 1988.

Because the case is remanded so that the district court can consider evidence about whether the 2007 Cap Fee complied with Idaho law there is no prevailing party. That said, "[o]nce there is a final judgment, the district court can consider attorney fees incurred on appeal in making its award of a reasonable attorney fee to the prevailing party." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 501, 224 P.3d 1068, 1090 (2009) (citing *Lexington Heights Dev., LLC v. Crandlemire*, 140 Idaho 276, 287, 92 P.3d 526, 537 (2004)).

# VI.
## CONCLUSION

We vacate the judgment and remand the case so that the district court can consider evidence on whether the 2007 Cap Fee follows Idaho law. Costs, but not attorney fees, are awarded to the City on appeal.

Chief Justice BURDICK, Justices HORTON, BRODY and STEGNER, CONCUR.